**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| KIESHA D. LEWIS,<br><br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF THE TREASURY,<br>INTERNAL REVENUE SERVICE,<br>BUREAU OF THE FISCAL SERVICE,<br>TREASURY INSPECTOR GENERAL FOR<br>TAX ADMINISTRATION,<br>BUREAU OF ENGRAVING AND<br>PRINTING and<br>U.S. DEPARTMENT OF VETERANS<br>AFFAIRS,<br><br>    Defendants. | Civil Action No. TDC-20-0494 |

**MEMORANDUM OPINION**

Self-represented Plaintiff Kiesha Lewis, a former employee of the United States Department of the Treasury ("Treasury"), has filed this civil action alleging that Defendants, consisting of Treasury, several component agencies of Treasury, and the United States Department of Veterans Affairs ("VA"), violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018) and the Privacy Act, 5 U.S.C. § 552a. Pending before the Court is Defendants' Motion to Dismiss. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Lewis is a former employee of the Internal Revenue Service ("IRS") and the Bureau of Engraving and Printing ("BEP"), both component agencies of Treasury. In the past several years, Lewis has filed document requests pursuant to FOIA with Treasury, the IRS, the BEP, the Treasury Inspector General for Tax Administration ("TIGTA"), and the VA. Defendants have responded to Lewis's FOIA requests by granting some and denying others based on FOIA statutory exemptions. In some instances, they have produced documents with redactions.

In the 16-count Complaint against Treasury, the IRS, the BEP, the Bureau of the Fiscal Service, and TIGTA (collectively, "the Treasury Defendants"), as well as against the VA, Lewis alleges violations of the Privacy Act within Counts 1-15. These allegations, as numbered in the Complaint, include claims that: (1) Treasury denied access to TIGTA reports relating to Lewis; (2) Treasury and the IRS improperly denied access to and modified information about Lewis in a human resources database known as the "HR Connect System"; (3) VA provided only redacted information in response to Lewis's request for hiring and ranking information about candidates for certain VA positions; (4) Treasury failed to provide upon request emails about Lewis held by the IRS Criminal Investigations Unit; (5) Treasury improperly kept Lewis's IRS email address active and thus gave the mistaken impression that she was still an employee of that agency; (6) Treasury improperly kept Lewis's BEP email address active with the same result; (7) Treasury improperly modified information about Lewis in the HR Connect System; (8) Treasury improperly required that Lewis provide personally identifiable information in order to have her removed from a BEP system; (9) Treasury improperly monitored Lewis's account on USAJobs, a website listing open positions in the federal government; (10) Treasury provided false information to interfere with Lewis's job opportunities with other federal government agencies and contractors; (11) Treasury

improperly accessed Lewis's tax information to interfere with an "IRS Fresh Start Application"; (12) Treasury improperly removed a complaint submitted by Lewis to TIGTA in November 2017; (13) Treasury improperly accessed Lewis's credentials relating to her government identification card so that she would be unable to transfer to another federal agency; (14) Treasury improperly accessed and altered information about Lewis to interfere with background investigations about Lewis; and (15) Treasury improperly accessed Lewis's contact information and wrongly associated her with a Michigan address. Compl. at 10-11, ECF No. 1.

The Complaint also alleges FOIA violations in Counts 1-4 and 16, including, as numbered in the Complaint: (1) Treasury's failure to produce complete, unredacted TIGTA reports; (2) the denial by Treasury and the IRS of access to information about Lewis in the HR Connect System; (3) VA's improper redaction of information provided in response to Lewis's FOIA request for information about the hiring and ranking of candidates for certain VA positions; (4) Treasury's failure to provide documents in response to a request for information held by the IRS Criminal Investigations Unit; and (16) Treasury's improper alteration of an email included in a response to a FOIA request. Lewis did not list the request number or date of filing of any particular FOIA request.

## DISCUSSION

The Treasury Defendants seek (1) dismissal of this action under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process; (2) dismissal under Rule 12(b)(6) of any claims against the Bureau of Fiscal Services for failure to allege sufficient facts to support a plausible claim against that Defendant; and (3) dismissal under Rule 12(b)(6) or, in the alternative, summary judgment under Rule 56(a), primarily on the grounds that Lewis failed to exhaust administrative remedies under the Privacy Act and FOIA. The VA seeks dismissal under Rule

3

12(b)(6) or, in the alternative, summary judgment under Rule 56(a) on the grounds that (1) Lewis failed to exhaust administrative remedies; and (2) the VA properly invoked statutory exemptions to disclosure when it redacted information in records disclosed to Lewis.

## I.   Legal Standards

### A.   Rule 12(b)(5)

Federal Rules of Civil Procedure 12(b)(5) authorizes dismissal of a case for insufficient service of process. A plaintiff defending against a Rule 12(b)(5) motion bears the burden to demonstrate that service was adequate. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *Danik v. Housing Auth. of Balt. City*, 396 F. App'x 15, 16 (4th Cir. 2010) (citing *Dickerson*, 604 F.3d at 752). If a court determines that service of process is insufficient, the Court has broad discretion to determine whether dismissal under Rule 12(b)(5) is warranted. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Dismissal is generally inappropriate "when there exists a reasonable prospect that service may yet be obtained." *Id.* Although the "plain requirements for the means of effecting service of process may not be ignored," a "technical violation of the rule" or "failure of strict compliance may not invalidate the service of process" when a defendant has received actual notice of a case. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

### B.   Rules 12(b)(6) and 56

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations

4

in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, a self-represented plaintiff must still carry "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). In this instance, Defendants have submitted declarations and other documentary evidence for consideration. Rule 12(d) requires courts to treat a Rule (12)(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by fact that the Motion, though titled only as a "Motion to Dismiss," specifically requests, in the alternative, summary judgment. Mot. Dismiss at 5, 7, 23, ECF No. 20-1. Moreover, the Court specifically sent a letter to Lewis, as a self-represented party, referencing Rules 12 and 56 and informing her that the Motion was seeking dismissal or summary judgment and providing guidance on how to respond to such a motion.

Notice at 1, ECF No. 21. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). No such declaration was filed here. The Court may therefore treat the Motion as seeking summary judgment as to the arguments requiring consideration of the submitted exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.     Service of Process

The Treasury Defendants move for dismissal pursuant to Rule 12(b)(5) because, they argue, Lewis failed to properly serve the complaint and summons within the required service period. To properly effectuate service on a federal agency, an individual must (1) deliver copies of the complaint and summons to the United States Attorney for the district in which the complaint

was filed, in this instance, the District of Maryland, or send the copies by registered or certified mail to the United States Attorney's Office; (2) send copies of the complaint and summons to the Attorney General of the United States; and (3) send copies of the complaint and the summons by registered or certified mail to the agency. Fed. R. Civ. P. 4(i). Before service, the summons must be properly completed by the plaintiff and submitted to the Clerk of the Court, and the Clerk "must sign, seal, and issue it to the plaintiff for service on the defendant." Fed. R. Civ. P. 4(b). "If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

Here, the Treasury Defendants argue that service was not properly effected based on the fact that Lewis's submitted proof of service states that she served Defendants on or before June 1, 2020, but the Court did not sign, seal, and issue the summonses to Lewis until June 16, 2020. A review of the docket reflects that when Lewis filed the Complaint on February 25, 2020, she submitted a completed summons form for each Defendant, but she did not include such forms for the United States Attorney or the Attorney General. She also submitted United Parcel Service ("UPS") tracking numbers with her proposed summonses, reflecting that she had already attempted to serve Defendants via UPS before the Clerk formally issued the summonses. On May 18, 2020, United States Magistrate Judge Gina L. Simms issued an order directing Lewis to file corrected summonses and informing her of the appropriate entities to be served and the valid methods of service, including registered or certified mail. Lewis subsequently submitted corrected summonses, and the Clerk stamped them and formally issued them on June 16, 2020. The summonses submitted by Lewis, however, each had the "Proof of Service" page partially

7

completed, with Lewis noting that she had served Defendants on or before June 7, 2020. On June 16, 2020, Lewis filed proof of service consisting of U.S. Postal Service certified mail receipts and printouts of tracking information showing that the mailings had been sent on May 23, 2020 and delivered on or before June 1, 2020. Thus, Lewis, apparently misunderstanding the process set forth in Rule 4(b), appears to have served the Complaint along with summonses that had been completed but had not yet been signed and stamped by the Clerk, then submitted copies of those summonses to the Clerk. Lewis does not argue otherwise. Though the service deadline, as extended 84 days by the Court's Standing Order 2020-07 relating to the COVID-19 pandemic, did not end until August 17, 2020, *see In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, No. 00-0308 (D. Md. Apr. 10, 2020) (ECF No. 99), Lewis apparently never mailed the official, stamped summonses before that deadline. Accordingly, the Court finds that service was technically defective.

Despite this insufficiency, dismissal under Rule 12(b)(5) is not warranted. If a plaintiff "shows good cause for the failure" to serve within the required period, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Good cause is "determined on a case-by-case basis within the discretion of the district court" based on factors including whether (1) the delay in service was outside plaintiff's control; (2) the defendant was evasive, (3) the plaintiff acted diligently or made reasonable efforts; (4) the plaintiff is *pro se* or *in forma pauperis*; (5) the defendant will be prejudiced; and (6) the plaintiff asked for an extension of time. *Scott v. Md. Dep't of Labor*, 673 F. App'x 299, 306 (4th Cir. 2016) (citing *Kurka v. Iowa Cty.*, 628 F.3d 953, 957 (8th Cir. 2010)).

Good cause exists here. Lewis is self-represented and acted diligently in making reasonable efforts to serve. After she was alerted to the fact that her initial submitted summonses

8

failed to include summonses for the United States Attorney and the Attorney General, and to the accepted methods of service, she corrected her proposed summonses, used a proper means—certified mail—to serve them upon the appropriate entities, and submitted proof of service. Though service was technically improper in that Lewis, apparently not appreciating the legal order of operations, did not wait until the Court stamped and issued official summonses before serving Defendants, the Treasury Defendants have not claimed that they did not actually receive notice of these proceedings. The fact that counsel for the Treasury Defendants subsequently entered an appearance and a filed a motion on August 17, 2020, the deadline for service, confirms that they received actual notice and have not been disadvantaged in any way.

Under these circumstances, the Court will deny the Treasury Defendants' Motion to Dismiss on the grounds of improper service. Where proper service has not technically been effected, the Court will direct the Treasury Defendants to inform the Court if their counsel will accept service or if they will waive service. If they decline to take either of these reasonable steps, the Court will grant Lewis an additional 60 days to properly serve the Treasury Defendants.

## III.   Bureau of Fiscal Services

The Treasury Defendants also seek dismissal of all claims against the Bureau of Fiscal Services ("BFS"), a component agency of Treasury, because Lewis has not alleged sufficient facts to state a valid claim against that agency. Despite listing the BFS as a Defendant in her Complaint, Lewis provides no factual allegations specifically referencing the BFS. Further, in opposing the Treasury Defendants' Motion, Lewis offered no argument against the dismissal of the claims against the BFS. Rather, in her memorandum in opposition to the Motion, Lewis's only reference to the BFS is a statement that BFS provided records responsive to one of her FOIA requests, in contrast to the VA's failure to do so. Because Lewis has pleaded no facts to allow the Court to

9

draw the "reasonable inference" that BFS "is liable for the misconduct alleged," BFS will be dismissed as a Defendant. *Iqbal*, 556 U.S. at 678.

### IV.    Privacy Act

Defendants seek dismissal of, or summary judgment on, the Privacy Act claims in Counts 1-15 based on a failure to exhaust administrative remedies. They argue that before filing a Privacy Act claim against a federal agency, a plaintiff must first have made a formal request to the agency for information relating to her, in accordance with applicable regulations, and that the agency must have denied the request.

The Privacy Act provides four different bases for a cause of action against a federal agency. An individual may bring a civil action when the agency (A) "makes a determination . . . not to amend an individual's record in accordance with [the individual's] request, or fails to make such review in conformity" with the relevant provisions of the Privacy Act; (B) "refuses to comply with an individual request" for access to an individual's own records; (C) "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness" in a determination relating to an individual "that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual"; or (D) "fails to comply with any other provision" of the Privacy Act "in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(A)-(D). The first two causes of action, § 552a(g)(1)(A)-(B), specifically reference requests made to an agency about an individual's records and thus "incorporate exhaustion requirements." *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990); *see Pollack v. Dep't of Justice*, 49 F.3d 115, 117 n.1 (4th Cir. 1995) (stating that an individual's Privacy Act claim "was not properly before the district court" because the individual "did not first exhaust administrative remedies provided under the Privacy Act"). For such causes

of action, an individual "must initially seek an amendment or access from the agency and even seek review within the agency before coming to court." *Haase*, 893 F.2d at 373 (citation omitted); *see also Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 476-77 (5th Cir. 1997) (applying a jurisprudential exhaustion requirement in finding that the dismissal of Privacy Act claims seeking access to records was warranted because the plaintiff failed to present a request that comported with Privacy Act regulations). However, the second two causes of action, § 552a(g)(1)(C)-(D), do not reference Privacy Act requests. For claims made under these two provisions, "exhaustion of administrative remedies is not required." *Hubbard v. U.S. Env't Prot. Adm'r*, 809 F.2d 1, 4-5 (D.C. Cir. 1986) (quoting *Nagel v. U.S. Dep't of Health, Educ., and Welfare*, 725 F.2d 1438, 1441 n.2 (D.C. Cir. 1984)).

Here, the Privacy Act claims in Counts 1-4, which Lewis labeled as claims of "Denial of Access to Records," reference requests to access records relating to Lewis and are therefore fairly construed as claims under § 552a(g)(1)(B). Compl. at 10. Within Treasury, to make a request under the Privacy Act for access to records about an individual, that individual must submit a request "in writing and signed," state "that it is made pursuant to the Privacy Act," identify "the system or subsystem or categories of records to which access is sought," "[d]escribe the nature of the record(s) sought in sufficient detail," provide "identification of the requester," "[b]e addressed or delivered in person to the office or officer of the component," and identify "whether the requester wishes to inspect the records or desires to have a copy made." 31 C.F.R. § 1.26(d)(1)-(2) (2020). Requests made to component agencies within Treasury such as TIGTA, the IRS, and the BEP must further comply with regulations specific to those components. *See* 31 C.F.R. pt. 1, subpt. C, app. A (TIGTA); 31 C.F.R. pt. 1, subpt. C, app. B (IRS); 31 C.F.R. pt. 1, subpt. C, app. F (BEP). After a properly made request is received, the agency has 30 days to respond. 31 C.F.R.

§ 1.26(g)(1). If the agency denies the request, "the person making the request shall be so notified" and advised "of the right to file suit." *Id.* § 1.26(g)(4).

A request to the VA must be "in writing, over the signature of the requester," "contain a reasonable description of the . . . system or systems of records involved," be "made to the office concerned" or the appropriate officer, and provide "[i]dentification of the individual requesting the information." 38 C.F.R. § 1.577(b) (2020). If the VA denies a request for access to records, the agency must "inform the requester in writing of the denial" and provide notice that the requester may appeal the adverse determination to the VA Office of the General Counsel. 38 C.F.R. § 1.580(a).

Defendants argue that Lewis's Privacy Act claims must be dismissed because she fails to allege "any facts to suggest she has exhausted her administrative remedies under the Privacy Act," including that she made Privacy Act requests that complied with the relevant agency's regulations. Mot. Dismiss at 6-7. Because this administrative exhaustion requirement is not jurisdictional, *see Taylor*, 127 F.3d at 475-76, Lewis is not required to demonstrate exhaustion at the pleadings stage. *See Wilcox v. Brown*, 877 F.3d 161, 167 (4th Cir. 2017) (stating that dismissal based on a plaintiff's failure affirmatively to show exhaustion of administrative remedies is improper because failure-to-exhaust is an affirmative defense that must be raised by the defendant); *Ramstack v. Dep't of the Army*, 607 F. Supp. 2d 94, 104 (D.D.C. 2009) (stating that for a Privacy Act claim, failure-to-exhaust is an affirmative defense for which the defendant bears the burden of pleading and proving). Where Lewis has either explicitly or implicitly alleged in Counts 1-4 that she made requests for records pursuant to the Privacy Act, Defendants must establish a lack of exhaustion of administrative remedies. As to Counts 1, 2, and 4, Defendants have provided no declarations or records addressing whether Lewis filed any Privacy Act requests with TIGTA or the IRS and

whether they were resolved. Although the BEP has asserted that it "did not receive any requests from Ms. Lewis pursuant to the Privacy Act," it acknowledged that it processed two of Lewis's FOIA requests under both FOIA and the Privacy Act, and that Lewis later filed an appeal regarding one of them. Larson Decl. ¶¶ 6-7, 21, Mot. Dismiss Ex. 2, ECF No. 20-4. That request and appeal related to "HR Connect System" information, *id.* ¶ 15, and corresponds to Count 2 of Lewis's Complaint. On Count 3, the VA likewise acknowledged processing a FOIA request by Lewis "under both the Privacy Act and the FOIA," which Lewis later appealed as to VA's March 19, 2021 supplemental disclosure of a single document. Gowins-Bellamy Decl. ¶ 5, Mot. Dismiss Ex. 4, ECF No. 20-6. Because Defendants have not provided a sufficient basis to establish that Lewis did not exhaust administrative remedies on the Privacy Act claims in Counts 1-4, the Motion will be denied without prejudice as to those claims.

As for Lewis's Privacy Act claims in Counts 5-15, these claims are not based on a request to amend or access records. Instead, as noted in the Complaint, they are based on "Improper Dissemination" or "Disclosure without Consent" of records relating to Lewis. Compl. at 10-11. They are most fairly construed as claims under § 552a(g)(1)(C)-(D) for failing to maintain accurate records resulting in an adverse determination against Lewis or failing to comply with some other provision of the Privacy Act, such as the prohibition against agency disclosure of "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). Lewis's claims are too vague for the Court to pinpoint what, if any, adverse determinations resulted from inaccurate records, as required for a violation of § 552a(g)(1)(C), or adverse effects resulted from violations of specific provisions of the Privacy Act, as required for a violation of § 552a(g)(1)(D), but Defendants have

not moved to dismiss these claims on any ground other than failure to exhaust administrative remedies, which does not apply. The Court will therefore deny the Motion as to the Privacy Act claims in Counts 5-15.

## V.   Freedom of Information Act

Defendants seek dismissal of, or summary judgment on, the FOIA claims in Counts 1-4 and 16. Defendants argue that dismissal is warranted because Lewis failed to exhaust administrative remedies. The VA further argues that summary judgment should be granted on the FOIA claim in Count 3 because the VA properly withheld the requested information pursuant to FOIA statutory exemptions.

### A.   Exhaustion of Administrative Remedies

A requester of information pursuant to FOIA "must ordinarily exhaust administrative remedies by appealing an issue through the FOIA administrative process following an initial adverse determination by the agency" before commencing litigation. *Coleman v. Drug Enf't Admin.*, 714 F.3d 816, 820 (4th Cir. 2013). This requirement "saves both agency and judicial resources" by providing an opportunity for "the requester and the agency to reach a mutually satisfactory resolution on their own," *id.* at 823, and it gives the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). Otherwise, judicial review of the agency's initial response "cut[s] off the agency's power to correct or rethink initial misjudgments or errors." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990).

The relevant regulations outline the applicable exhaustion requirements. At Treasury, FOIA requesters "generally must first submit a timely administrative appeal" before "seeking

review by a court of a [Treasury] component's adverse determination." 31 C.F.R. § 1.6(a). At the VA, a FOIA requester must "first appeal the [VA's] adverse determination" within the agency "before seeking review by a court." 38 C.F.R. § 1.559(f).

Here, undisputed declarations and exhibits submitted by Defendants establish that based on a review of their respective FOIA records, the IRS, the BEP, TIGTA, and the VA have received approximately 40 FOIA requests from Lewis and received only three administrative appeals. Lewis filed 29 FOIA requests with the IRS between February 2018 and February 2020, 10 of which sought information relating to subjects of Lewis's claims: the HR Connect System, the IRS Criminal Investigations Unit, and emails. A review of the relevant records establishes that despite having received notifications on multiple occasions of her right to file an administrative appeal of the agency's FOIA determinations, Lewis did not file any such appeal for any of the 29 FOIA requests to the IRS. Lewis has neither claimed nor presented evidence that she filed any such appeals.

A review of the relevant files at the BEP revealed that Lewis filed two FOIA requests with that agency. A May 2019 request sought an accounting and history of Lewis's Personal Identity Verification credentials, and a November 2019 request sought an HR Connect System audit trail. The BEP responded to both requests, but it did not receive an administrative appeal relating to the May 2019 request. Lewis has not claimed otherwise. However, BEP received an administrative appeal from Lewis on the November 2019 request, Request No. 2019-10-116, regarding the HR Connect System audit trail. On February 21, 2020, BEP resolved the appeal by concluding that Lewis did not have the right to appeal because, in its view, it had provided Lewis with all responsive records without redactions.

As to TIGTA, a record review revealed that Lewis made eight separate FOIA requests to TIGTA between 2017 and 2020, and TIGTA responded to all of them. Lewis, however, filed an administrative appeal on only one of the FOIA requests, Request Number 2020-FOI-00023. Lewis sent an email on November 29, 2019 which TIGTA specifically construed as an appeal of that request. Although the Treasury Defendants argue that this email "did not challenge TIGTA's withholding of responsive records" but was instead "construed as an appeal of TIGTA's determination that [her request] was a duplicate," Mot. Dismiss at 13 n.2, Lewis's submission specifically asserted that TIGTA chose to "withhold . . . files using Exemption 6 and Exemption 7," and that she did not "believe that either of these exemptions appl[ied]." Turner Decl. Ex. Q, Mot. Dismiss Ex. 3, ECF No. 20-5. Where Lewis challenged the withholding of responsive records, the Court finds that Lewis filed an administrative appeal on this request.

As for the VA, a review of its records revealed that the VA received a FOIA request from Lewis, dated October 20, 2019, seeking "the Applicant History Report" and the "Evaluation and Selection Process information" for four VA job openings. Gowins-Bellamy Decl. ¶¶ 5-6. The VA responded to Lewis's request, Request Number 20-00012-FOIP, in November 2019 by providing redacted, responsive records but did not receive an administrative appeal from Lewis within the applicable 90-day time period. In March 2021, during the pendency of this case, the VA discovered an additional responsive record that had not been previously sent and provided that one-page document to Lewis on March 19, 2021, two days before the filing of the present Motion. Lewis filed an administrative appeal of that March 2021 response.

Based on the declarations and exhibits submitted by Defendants, Lewis filed administrative appeals on only three of her FOIA requests, Request No. 2020-FOI-00023 to TIGTA, Request No. 2019-10-116 to the BEP, and the March 2021 response to Request No. 20-00012-FOIP to the VA.

16

These requests appear to form the basis, in part, of Counts 1, 2, and 3, respectively. The Court will therefore deny the Motion as to those parts of Counts 1, 2, and 3 based on these specific FOIA requests on which Lewis exhausted administrative remedies.

As for the FOIA claims for which there was no administrative exhaustion, Lewis argues only that the agencies did not respond to her requests in a timely manner, that in some instances they provided altered records, and that even when she enlisted the assistance of her congressional representatives, she did not receive satisfactory responses. Such lengthy delays and unsatisfactory responses do not excuse the failure to exhaust. A requester may commence litigation if "the agency fails to comply with the applicable time limit provisions" of FOIA, 5 U.S.C. § 552(a)(6)(C)(i), but the requester must do so before the agency "cure[s] its violation by responding before the requester files suit." *Coleman*, 714 F.3d at 820. Once the agencies provided responses, even if unsatisfactory, Lewis was required to file administrative appeals before filing suit. Because Defendants have established, and Lewis has not contested, that Lewis did not exhaust administrative remedies as to any FOIA requests other than the three discussed above, the Court will grant the Motion as to all other parts of the FOIA claims in Counts 1-3, and the FOIA claims in Counts 4 and 16, to the extent that the claims are based on FOIA requests received and addressed by TIGTA, the IRS, or the BEP. *See infra* part VI.

**B.   Remaining FOIA Claims**

Lewis has exhausted administrative remedies on the FOIA claims relating to Request No. 2020-FOI-00023 to TIGTA (Count 1), Request No. 2019-10-116 to the BEP (Count 2), and the March 2021 response to Request No. 20-00012-FOIP to the VA (Count 3). On the claim in Count 1 against TIGTA, where the Treasury Defendants have provided no argument for dismissal beyond exhaustion of administrative remedies, the Motion will be denied as to that claim. On the claim in

Count 2 against the BEP, the Treasury Defendants' only additional argument is that it should be dismissed because the BEP granted Lewis's FOIA request for HR Connect System records, and her Complaint does not challenge the adequacy of the search for responsive records. Notably, however, the BEP official who reviewed the agency's FOIA records acknowledged that in her appeal, Lewis "assert[ed] the information was not complete." Larson Decl. ¶ 21. In her Complaint, Lewis asserted in Count 2 that Defendants "improperly den[ied] access to and/or modif[ied]" the HR Connect System records. Compl. at 10. Construing the Complaint in the light most favorable to Lewis, the Court finds that Lewis has stated a claim that the BEP's response to her FOIA request was inadequate. Where the Treasury Defendants offer no other basis for dismissal, the Motion will be denied as to this claim.

As for the FOIA claim in Count 3 relating to the March 2021 response by the VA, the VA argues that based on the submitted record evidence, summary judgment should be granted because the VA properly invoked FOIA statutory exemptions in redacting the document.

FOIA "was enacted to maintain an open government and to ensure the existence of an informed citizenry." *Ethyl Corp. v. Env't Prot. Agency*, 25 F.3d 1241, 1245 (4th Cir. 1994). To that end, it "is to be construed broadly to provide information to the public in accordance with its purposes." *Id.* However, because "public disclosure is not always in the public interest, the statute contains nine exemptions that reflect a wide array of concerns and are designed to safeguard various public interests against the harms that would arise from overbroad disclosure." *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 728 (4th Cir. 2013) (internal citations omitted). "FOIA exemptions are to be narrowly construed." *Id.* at 729 (internal citation omitted). The Government has the "burden of demonstrating that a requested document falls under an exemption." *Id.* (quoting *Hunton & Williams v. Dep't of Justice*, 590 F.3d 272, 276 (4th Cir.

2010)).   The Government can meet this burden by "describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions." *Id.* (quoting *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004)).

When a plaintiff asserts a civil claim that an agency failed to disclose information as required by FOIA, courts "shall determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). In resolving the matter, a court may "examine the contents of . . . agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." *Id.*

The VA's March 2021 response produced a redacted version of a record with the file name "18-VAOIG-97-SES ERB Memo DAIG 53 – March 2018.docx." Gowins-Bellamy Decl. ¶¶ 10-11. Pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the VA submitted an index known as a "*Vaughn* Index" describing the materials withheld from disclosure and identifying the FOIA exemptions it was invoking as justification. *See id.* at 826-28. The VA described this record as an April 6, 2018 VA Office of the Inspector General ("VA OIG") "memo appointing Senior Executive Service members to serve on the Executive Resources Board for the position of Deputy Assistant Inspector General for Management and Administration . . . to rate and rank applicants and determine the best qualified applicants for referral." VA OIG *Vaughn* Index at 3, Mot. Dismiss Ex. 5, ECF No. 20-7.  To justify its redactions, the VA invoked the FOIA exemptions set forth in 5 U.S.C. §§ 552(b)(5) and 552(b)(6), commonly referred to as "Exemption 5," and "Exemption 6," respectively.

Exemption 5 permits the Government to withhold from disclosure "inter-agency or intra-agency memorandums . . . that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  As relevant here, it "encompasses . . . the

deliberative process privilege." *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 371 (4th Cir. 2009). Documents subject to this privilege must be both "predecisional" and "deliberative." *Id.* at 372. Predecisional documents are those "prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* at 372 n.28 (quoting *City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993)). Deliberative material must "reflect[] the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Id.* at 372-73 (quoting *City of Virginia Beach*, 995 F.2d at 1253).

The VA argues that Exemption 5 applies to the memorandum because it "concern[s] the VA's decision-making as it relates to evaluation of applicants and hiring" and reflects the "give-and-take of the consultative process." Mot. Dismiss at 28. The Court agrees that the document is predecisional because it was created as part of the process of filling the position of Deputy Assistant Inspector General for Management and Administration. However, whether the document contains deliberative material is not apparent from the description in the *Vaughn* Index. To be sure, courts have held that Exemption 5 protects the "'deliberative process' involved in making personnel decisions, an area in which candor is particularly important." *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Commerce*, 632 F. Supp. 1272, 1277 n.6 (D.D.C. 1986), *aff'd* 907 F.2d 203 (D.C. Cir. 1990); *see, e.g., May v. Dep't of the Air Force*, 777 F.2d 1012, 1014 (5th Cir. 1985); *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 48-49 (D.D.C. 2017). Such applications of Exemption 5 most typically involve records that reference internal discussion, evaluation, opinions, or recommendations about candidates. *See, e.g., Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 207-08 (D.C. Cir. 1990) (permitting the withholding of forms identifying the vacant position, a statement of the necessary

skills and qualifications which could be open to revision, and the name of an employee recommended for the position); *May*, 777 F.2d at 1013-14 (permitting the withholding of forms providing evaluations of a particular candidate for promotion); *Judicial Watch, Inc.*, 282 F. Supp. 3d at 48-49 (permitting the withholding of emails between high-level officials discussing potential personnel appointments).   Where the VA has described the document in question as a memorandum relating to the appointment of the members of the Executive Resources Board for a particular hiring decision, it is unclear whether it contains similar material or whether it simply lists the appointed individuals, the dates of their meetings, or other such information. The VA has not provided legal authority establishing that Exemption 5 protects such non-consultative information from disclosure.

     The same concerns bear on the VA's citation of Exemption 6, 5 U.S.C. § 552(b)(6), which is invoked to justify the redaction of not only the entire body of the memorandum, but also the names and other identifying information of the author and recipients of the memorandum, which may include the personnel chosen to serve on the Executive Resources Board.   Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  To determine whether an invasion of privacy would be "clearly unwarranted," the court balances an individual's privacy interests against the public interest in disclosure, which is served "to the extent . . . disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties.'" *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 332 (4th Cir. 2016) (quoting *U.S. Dep't of Defense v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 497 (1994)).  Exemption 6 covers "personal information in public records, even if it is not embarrassing or of an intimate nature." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).

Here, the VA argues that the memorandum is a personnel record, that redaction of names and other information protects the privacy interests of those involved in the hiring process, and that no countervailing public interest warrants disclosure. The VA's argument and cited authority, however, focuses on the privacy interests of applicants. The VA has not asserted that applicants are referenced in this memorandum, and it offers no specific argument for why the release of the identity of the Executive Resources Board members, or the content of the memorandum more generally, sufficiently impact privacy interests so as to warrant redaction. Particularly where the VA has not provided the unredacted document for *in camera* review, and Lewis has identified an interest in ensuring that the agency properly carried out its hiring duties, the Court lacks sufficient information to evaluate the privacy interest in preventing disclosure of the identity of the Executive Resources Board members and the content of the memorandum, and to then balance it against any public interest and determine whether Exemption 6 applies. *See Quinon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (stating that on a FOIA claim, *in camera* review may be warranted, including when the agency's submission is "insufficiently detailed to permit meaningful review of exemption claims").

Because the Court cannot at this stage determine whether the VA properly invoked Exemptions 5 and 6 as to the April 6, 2018 memorandum, the Court will deny summary judgment as to the FOIA claim in Count 3 relating to that document.

## VI.   Motion for a More Definite Statement

In the alternative, the Treasury Defendants include a Motion for More Definite Statement under Federal Rule of Civil Procedure 12(e) as to the claims not otherwise dismissed. Rule 12(e) permits a Court to order a more definite statement where a pleading is "so vague or ambiguous that [a] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). On Privacy Act claims,

a more definite statement is warranted where a plaintiff fails to include significant details, such as the specific requests made for access to records, what information in an agency's record was allegedly false, and what adverse determination resulted from the agency's actions. *Pinson v. U.S. Dep't of Justice*, 975 F. Supp. 2d 20, 29 (D.D.C. 2013). As discussed above, *see supra* part IV, Lewis's allegations relating to her Privacy Act claims are very imprecise to the point that the Court is not entirely certain of the specific claims being asserted. Accordingly, the Motion for a More Definite Statement will be granted as to the Privacy Act claims. For each of Counts 1-4, Lewis must specifically identify the Privacy Act request she made, including the date it was submitted, the recipient agency, the agency's response, and whether any appeal was filed. For Counts 5-15, Lewis must provide for each count the specific statutory basis for each claim. If it is a claim under § 552a(g)(1)(C) for a failure to maintain accurate records, she must identify the specific records at issue, state how the records are inaccurate, and describe the adverse determination that occurred. If it is a claim under § 552a(g)(1)(D), she must identify what specific provision of the Privacy Act was violated, how it was violated, and what adverse effects resulted.

As for the FOIA claims, the Court has received information about all FOIA requests submitted to the IRS, TIGTA, and the BEP and has granted the Motion to Dismiss as to any FOIA claims associated with such requests except for the two FOIA requests to these Defendants for which Lewis exhausted administrative remedies. *See supra* part V. There is no need for a more definite statement as to FOIA claims relating to those agencies, which are limited to the claims on those two requests.

There remains, however, the question of whether Lewis is asserting any claims based on FOIA requests submitted to Treasury that were processed by Treasury itself, not one of the identified component agencies. Although the Treasury Defendants have stated that "there is no

central location containing an index of records" and that a request received by the Treasury itself "shall be transferred to the appropriate bureau," Mot. Dismiss at 11, the records submitted by Lewis include a response to a FOIA request for "a complete audit log on all activity on [Lewis's] HR Connect Account" that was provided by Treasury's FOIA office. Opp'n Mot. Dismiss Ex. 3, ECF No. 22-4. Unlike the component agencies, Treasury has not provided an accounting of all FOIA requests by Lewis that it resolved through its own FOIA office. Though Counts 1 and 4 plainly relate to TIGTA and the IRS, respectively, to the extent that any part of Lewis's FOIA claims in Counts 2 or 16 are based on a FOIA request submitted to and processed directly by Treasury as opposed to one of the component agencies, the Court will require Lewis to provide a more definite statement as to such claims. Lewis must provide a specific description of each such FOIA request, including the date submitted, the specific documents requested, the response received, and whether any appeal was filed, and she must identify the specific count in the Complaint to which the FOIA request relates. *See Pinson*, 975 F. Supp. 2d at 28. Lewis will be limited to identifying FOIA requests that are fairly construed as the subject of Counts 2 or 16 and that were processed by Treasury itself, as opposed to the IRS, TIGTA, the BEP, or the Bureau of Fiscal Services, and will not be permitted to add new claims based on requests about other subjects.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to all claims against Defendant Bureau of Fiscal Services and all FOIA claims in Counts 1-4 and 16, except (1) the claims relating to Request No. 2020-FOI-00023 to TIGTA (Count 1), Request No. 2019-10-116 to the BEP (Count 2), and the March 2021 response to Request No. 20-00012-FOIP to the VA (Count 3), and (2) any FOIA claims in Counts 2 and 16 based on FOIA requests processed by the Treasury FOIA Office. The

Motion for a More Definite Statement will be granted as to all Privacy Act claims and as to the FOIA claims in Counts 2 and 16 based on FOIA requests processed by the Treasury FOIA Office. The Motion will be otherwise denied. A separate Order shall issue.

Date: September 21, 2021

THEODORE D. CHUANG
United States District Judge