IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KIESHA DANIELLE LEWIS, | ) | |
| | ) | Case No. 8:20-cv-00494-TDC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPT. OF TREASURY, *ET AL*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Amended Complaint fails to allege a cognizable claim against Defendants Department of Treasury (Department), Internal Revenue Service (Service), Treasury Inspector General for Tax Administration (TIGTA), and Bureau of Engraving and Printing (BEP) (collectively, "Treasury Defendants"). For these reasons, the Treasury Defendants move to dismiss the claims asserted by Plaintiff Kiesha Danielle Lewis under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment as to her claims.

As to the claim against the Department of Veterans Affairs (the VA), Plaintiff's claims are moot. Thus, the VA moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(1), or in the alternative, for summary judgment as to the Third Cause of Action.

### Background

*Treasury Defendants*

Kiesha Lewis is a former independent contractor for the BEP and a former employee of the Service. Between 2017 and 2020, she sent over thirty requests for various records to the Service, BEP, and TIGTA. Lewis sued under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, over some of these requests, but did not

provide enough information to specify which of the thirty requests she seeks to challenge.  Doc. No. 1 at 10–11.  The Treasury Defendants moved to dismiss all of Lewis's claims.  Doc. No. 20. The Court granted this motion in part, denied the motion in part, and directed Lewis to file a more definite statement.  Doc. No. 24.  Lewis then filed an Amended Complaint.  Doc. No. 27 (redline version); Doc. No. 28 (clean version).

Following a hearing counsel for the Treasury Defendants met with Lewis to narrow the issues.  Doc. No. 37  As a result of that conference, the parties stipulated to the dismissal of several claims, leaving only the First Cause of Action, Fifth Cause of Action, Nineth Cause of Action, Eleventh Cause of Action, and Twelfth Cause of Action against the Treasury Defendants.  Doc. No. 38.

*VA Background*

On or about October 20, 2019, Plaintiff emailed the VA Central Office, FOIA Service, requesting "the Applicant History Report" and the "Evaluation and Section Process information" for four job announcements.  R. Gowins-Bellamy Decl., ¶ 6 (ECF No. 20-6).  The VA referred the request to the VA, Office of Inspector General ("VA OIG"), Office of Information Release, which responded on November 8, 2019 by partially granting Plaintiff's request and producing on November 8, 2019 seventy-one pages of records with redactions in accordance with the exemptions outlined in the Privacy Act and FOIA.  *See id*. ¶¶ 7-8.

The VA OIG did not receive an administrative appeal from Plaintiff, either within the required 90 calendar days or at any time prior to Plaintiff initiating suit in federal district court. *Id*. ¶ 9.  In March 2021, the VA OIG discovered that a single-page record that was responsive to Plaintiff's October 2019 FOIA request was inadvertently not produced by the VA in November 2019.  *Id*. ¶ 10.  The VA OIG produced this single-page document with redactions to Plaintiff on

March 19, 2021.  *Id*. ¶ 11.  On March 22, 2021, Plaintiff filed an administrative appeal concerning the single-page document.  *Id*. ¶ 12.  After further review and consideration, the Agency, on November 3, 2021, provided a less-redacted version of the seventy-plus pages requested by Lewis in October 2019, including the single-page record produced on March 19, 2021, redacting only identifying information for third-party non-selectees.  *See* Nov. 3, 2021 Corres., Ex. 6.

Plaintiff's claims against the VA solely relate to the single-page record initially produced on March 19. 2021.  Am. Compl. at 4 (ECF 27); Sept. 21, 201 Mem. Op. at 16-17 (ECF No. 24). Plaintiff concedes that the VA has provided the information she requested.   Joint Status Report, (ECF No. 37) ("Plaintiff agrees that the VA provided the information Plaintiff requested from the VA").   However, Plaintiff "believes the VA acted unreasonably and arbitrarily when it redacted the single-page document that it produced on March 19, 2021, and Plaintiff believes she is entitled to monetary compensation."  *Id*.

<u>**Argument**</u>

**I.    Summary judgment should be granted for TIGTA as to Lewis's First Cause of Action because TIGTA is properly withholding the twenty-two (22) pages in part and four (4) pages in full pursuant to FOIA exemptions, and the Privacy Act prohibits disclosure.**

The Freedom of Information Act (FOIA) "was enacted to facilitate public access to Government documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  The FOIA provides an avenue for public access to official information, and the FOIA establishes a "judicially enforceable public right to secure such information."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

Yet Congress also recognized that public interest does not always support public disclosure and provided nine exemptions under which an agency may withhold records from disclosure. *C.I.A. v. Sims*, 471 U.S. 159, 166–67 (1985).  These numerated exemptions do not obscure the

broad provisions favoring disclosure, but establish a balance between the public's right to information and the Government's need to protect certain information.  *Rose*, 425 at 361; *John Doe Agency v. John Doe Corp.*, 493 US. 146, 150 (1989).

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Cases under the FOIA are decided on summary judgment and may be granted based only on agency affidavits if they are sufficiently detailed and are submitted in good faith.  *See, e.g., Am. Management Servs., LLC, v. Dep't of the Army*, 703 F.3d 724, 733 (4th Cir. 2013) (citing *Spannaus v. Dep't of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987); *Wickwire Gavin P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004.  Such affidavits or declarations receive "a presumption of good faith, which cannot be rebutted by purely speculative claims . . .." *Goldner v. Soc. Sec. Admin.*, 293 F. Supp. 3d 540, 544 (D.Md. 2017) (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200, (D.C. Cir. 1991)).  Courts can review the documents at issue *in camera*, however, "When the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate." *Hayden v. Nat'l Sec. Agency/ Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

In her initial complaint, Lewis revealed her First Cause of Action relates to "non-redacted FOIA responses for requested TIGTA reports."  Doc. No. 1 at 10.  The Court dismissed the First Cause of Action except to the extent that Lewis seeks relief under the FOIA and the Privacy Act related to her TIGTA Request Number 2020-FOI-00023.  Doc. No. 25 at 1–2.  In her amended complaint, Lewis clarifies that she pursues relief under the FOIA for requests made related to TIGTA Case Numbers TRN-1611-0623 and TRN-1701-0215, as well as requests made for the HR

4

Connect Audit Log Information.  Doc. No. 27 at 1.  Based on the exhibits attached to the complaint, Lewis appears to be asserting claims related to Request Numbers 2017-FOI-00102 (Doc. No. 27-2 at 4) and 2020-FOI-00023 (Doc. No. 27-2 at 5).  If she seeks relief against the Service, Department, or BEP, the Court already dismissed her claims.  Doc. No. 25 at 1–2.

TIGTA received Request Number 2017-FOI-00102 where Lewis requested the "status and outcome" of "TIGTA Case Numbers: TRN-1701-0215 [and] TRN-1611-00623."  Declaration of Alexis Turner (Turner Decl.), ¶¶ 4–5.  In response, TIGTA located one hundred thirty-eight (138) total pages responsive to her request, releasing one hundred twelve (112) pages in full and twenty-two (22) pages in part.  *Id.,* ¶ 7; Doc. No. 20-5 at 11.  TIGTA withheld four (4) pages in full. Turner Decl., ¶ 7; Doc. No. 20-5 at 11.  TIGTA withheld the twenty-two (22) pages in part and four (4) pages in full of two records under FOIA Exemptions 6 and 7(C).  Turner Decl., ¶ 8; Doc. No. 20-5 at 11.  TIGTA did not receive an appeal from Lewis over this determination.  Turner Decl., ¶ 10.

Yet Lewis submitted a second request for the same records several months later.  *Id.,* ¶ 11. TIGTA assigned this Request Number 2020-FOI-00023 and determined it was a duplicate of Request Number 2017-FOI-00102.  *Id.*, ¶¶ 12–13.  In response, TIGTA alerted Lewis that the request was a duplicate and provided her with a copy of its response to Request Number 2017-FOI-00102.  *Id.,* ¶ 15; Doc. No. 20-5 at 27.  Lewis emailed TIGTA, seeking reconsideration of TIGTA's determination to withhold documents.  Turner Decl., ¶ 16; Doc. No. 20-5 at 32. Construing this as an appeal, TIGTA affirmed the prior determination in Request Number 2017-FOI-00102 to withhold four (4) pages in full and twenty-two (22) pages in part under FOIA Exemptions 6 and 7(C) and the Privacy Act.  *Id.*, ¶¶ 17–19.

A.  TIGTA is properly withholding twenty-two (22) pages in part and four (4) pages in full pursuant to FOIA Exemption 6.

TIGTA withheld information under FOIA Exemption 6.  "Exemption 6 covers personnel, medical, or 'similar files'" to protect such information from disclosure under FOIA.  *Goldner v. Soc. Sec. Admin.*, 293 F. Supp. 3d 540, 546 (D.Md. 2017) (citing *U.S. Dep't of States v. Washington Post Co.*, 456 U.S. 595, 600 (1982)).  Courts employ a two-prong test to determine whether records have been properly withheld pursuant to FOIA Exemption 6.  *Id.*  First, the Court looks to whether the information withheld is contained in personnel, medical, or similar files.  *Id.*  The Supreme Court has broadly interpreted "similar files" to include information that applies "to a particular person."  *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599–603 (1982).  Any records containing information applying to a particular individual will satisfy this threshold test for Exemption 6.  *Id.*; *see also Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 332 (4th Cir. 2016).

TIGTA has asserted Exemption 6 to withhold a third party's name, address, office, post of duty, potential conduct violations, and internal reference numbers.  Turner Decl., ¶¶ 25–31.  This information clearly applies to a particular individual, and therefore, the information withheld is contained in personnel, medical, or similar files such that it satisfies the first inquiry.  *Solers*, 827 F.3d at 332.  Next, the Court should determine whether release of this information would constitute a "clearly unwarranted invasion of that person's privacy" by balancing the individual's privacy interests against public disclosure.  *Id.*  "The public interest is served to the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  *Id.* (cleaned up).

Here, government employees "have a substantial interest in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment."  *Neely v. FBI*, 208 F.3d 461, 464–65 (4th Cir. 2000).

Additionally, disclosing the third party's name, address, office, post of duty, potential conduct violations, and internal reference numbers would serve no cognizable public interest. *Id.*; *Solers*, 827 F.3d at 333. As a result, the Court should find that TIGTA has properly withheld the four (4) pages in full and twenty-two (22) pages in part pursuant to FOIA Exemption 6.

      **B.**   <u>TIGTA is properly withholding twenty-two (22) pages in part and four (4) pages in full pursuant to FOIA Exemption 7(C).</u>

TIGTA is also withholding from disclosure "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). The series of FOIA's Exemptions under 5 U.S.C. § 552(b)(7) protect from disclosure "records or information compiled for law enforcement purposes." *Id.* The Court should apply a two-part test to find that an agency has properly withheld information under one of the law enforcement exemptions from disclosure under section 552(b)(7): (1) the withheld records must be compiled for law enforcement purposes and (2) disclosure of the requested records must cause one of the harms enumerated by statute. *Id.* For Exemption 7(C), the second part of the test is identical to the analysis applied for the application of Exemption 6. *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 332 (4th Cir. 2016).

First, the withheld records were compiled for law enforcement purposes. Lewis submitted complaints to TIGTA alleging criminal violations or administrative misconduct by an employee of the Internal Revenue Service. Turner Decl., ¶¶ 21 and 26. Additionally, TIGTA has law enforcement authority. 5 U.S.C. App. 3 § 8D; Turner Decl., ¶¶ 33–34; Declaration of John Kirk (Kirk Decl.), ¶ 3. So, because these records were compiled by an agency with criminal law enforcement authority during an investigation, these records have been "compiled for law enforcement purposes" such that they satisfy the initial inquiry under Exemption 7(C). Turner Decl., ¶¶ 35–36; *FBI v. Abramson*, 456 U.S. 615, 622 (1982).

Next, having found that the information was compiled for law enforcement purposes, the Court applies the same balancing test it applied for Exemption 6: whether release of this information would constitute a "clearly unwarranted invasion of that person's privacy" by balancing the individual's privacy interests against public disclosure. *Solers*, 827 F.3d at 332. As explained above, the third party has a substantial privacy interest in protecting this information from disclosure, while little or no public interest exists. *See Supra § II.B.ii.*

TIGTA balanced the public's interest against the private interests of the individuals and determined that the public's interest does not outweigh the individuals' interest. Turner Decl., ¶¶ 37–40. Moreover, it reasonably segregated all exempt records or portions of records from non-exempt records or portions of records. *Id.*, ¶ 24. For these reasons, the Court should find that TIGTA has properly withheld the four (4) pages in full and twenty-two (22) pages in part under FOIA Exemption 7(C).

C. The Privacy Act prohibits TIGTA from disclosing the twenty-two (22) pages in part and four (4) pages in full.

TIGTA routinely processes under the FOIA requests for records made under both the FOIA and the Privacy act, in order to give the requester the greatest access to information available. Turner Decl., ¶ 42. TIGTA processed the records under the FOIA, since she would gain greater access to the information she requested under the FOIA. *Id.*, ¶ 47. It is worth noting, however, that the Privacy Act provides that, unless authorized by the Act, "no agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b); *see also Goldstein v. Treasury Inspector Gen. for Tax Admin. (TIGTA)*, 172 F. Supp. 3d 221, 235 (D.D.C. 2016) (finding where Plaintiff has not obtained consent from any of the IRS Employees to whom the responsive records

pertain, the records may not be disclosed).  While Lewis's complaints appear to have launched the

TIGTA investigation and the generation of the responsive documents, this does not mean the

documents are "about" Lewis or that they "pertain" to her.  *Goldstein*, 172 F. Supp. 3d at 235.  The

employee identified in Lewis's TIGTA complaint and subsequent requests did not consent to the

release of TIGTA's investigative files.  Turner Decl., ¶¶ 44–46.  Even if the records were about

Lewis, "when materials pertain to both a Privacy Act requester and a third party from whom

consent has not been obtained, the Privacy Act's prohibition on disclosure 'must take

precedence.'"  *Goldstein*, 172 F. Supp. 3d at 235 (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d

1106, 1121 n.9 (D.C. Cir. 2009)).  Because Plaintiff has not obtained the consent of the third-party

employee to whom the records pertain, these records may not be disclosed under the Privacy Act.

*Id.*  For these reasons, the Court should grant summary judgment for TIGTA.  *Id.*

## II.   The Court Should Dismiss Plaintiff's Claims Against the VA as Moot.

Because the VA re-produced the single-page record without redactions on November 3,

2021 and Plaintiff agrees that the VA has now produced the information she seeks, there is no

longer a justiciable case or controversy and the Court should dismiss Plaintiff's claims against the

VA as moot.

Section 2 of Article III of the United States Constitution requires the existence of a case or

controversy throughout all stages of federal judicial proceedings.  *See Lewis v. Cont'l Bank Corp.*,

494 U.S. 472, 277 (1990).  A case becomes moot "when the issues presented are no longer 'live'

or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S.

486, 496 (1969).  "The case-or-controversy requirement applies to all stages of a federal case.  '[I]t

is not enough that a dispute was very much alive when [the] suit was filed,' but the parties must

continue to have a 'particularized, concrete stake' in the outcome of the case through all stages of

litigation." *Williams v. Ozmint*, 716 F.3d 801, 808-09 (4th Cir. 2013) (internal quotation marks omitted), *cert. denied*, 134 S. Ct. 1294 (2014).

As with other types of civil litigation, FOIA and Privacy Act lawsuits may become non-justiciable because of mootness.  Under FOIA, jurisdiction is granted to federal district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Under the Privacy Act, an individual may bring a civil action against an agency if the agency "refuses to comply with an individual request under subsection (d)(1) ...."  5 U.S.C. § 552a(g)(1)(B).

As a prerequisite to jurisdiction under FOIA, however, there must be improper agency action under the statute for which judicial review may be sought.  The language of the statute makes clear that "federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"  *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980).  Likewise, under the Privacy Act, the only relief the court can give a successful plaintiff for an access violation is to "enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him."  5 U.S.C. § 552a(g)(3)(A).

Therefore, if during litigation documents responsive to the underlying FOIA or Privacy Act request have been released to the requester, there is no longer a justiciable case or controversy and the suit should be dismissed as moot.  *See Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) (citing *Payne Enter., Inc. v. United States*, 837 F.2d 486, 490-91 (D.C. Cir. 1988)) ("It is undisputed that a challenge to a particular denial of a FOIA request becomes moot if an agency produces the requested documents."); *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once

10

all requested records are surrendered, federal courts have no further statutory function to perform."); *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("[B]ecause the report was located in the work file and subsequently disclosed, the issue is moot for purposes of this FOIA action."); *Heily v. U.S. Dep't of Defense*, 896 F. Supp. 2d 25, 37 (D.D.C. 2012) (FOIA claims seeking investigatory records dismissed as moot after they were produced during the pendency of the action), *aff'd*, 2013 WL 5975876 (D.C. Cir. Oct. 16, 2013); *Shortall v. Baltimore Dist. U.S. Army Corps of Engineers*, WMN-14-3904, 2015 WL 3545259, at *3 (D. Md. June 4, 2015) ("In a lawsuit seeking the release of documents under FOIA, '[o]nce the records are produced, the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.'") (quotation omitted).  In an access case, "[o]nce the requested documents have been produced, the claim for relief ... becomes moot." *DeBold v. Stimson,* 735 F.2d 1037, 1040 (7th Cir. 1984) (U.S. Postal Service turned over documents requested under FOIA during the course of the litigation.); *see also Lovell v. Alderete,* 630 F.2d 428 (5th Cir.1980) (Although the information was delivered late, where plaintiff received all of the requested documents, his action was moot.).

In this case, the VA's re-production of the single-page document with fewer redactions on November 3, 2021 and Plaintiff's concession that she now has the information she sought precludes jurisdiction over Plaintiff's claim under FOIA or the Privacy Act.  The fact that Plaintiff is now requesting monetary compensation does not change the analysis.  Money damages are not available under FOIA.  *See Smith v. Commc'ns Works of Am. (CWA)-Dist. 2,* 8:12–CV–00027–AW, 2012 WL 6727150, at *4 (D. Md. Dec. 26, 2012) *aff'd sub nom. Smith v. E.E.O.C.,* 517 F. App'x 159 (4th Cir.2013) (*citing* § 552(a)(4)(B)).  The only remedy available under FOIA is injunctive relief.  *Kissinger*, 455 U.S. at 150; 5 U.S.C. § 552(a)(4)(B) (district court "has

jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant").

To recover monetary damages under the Privacy Act, a plaintiff must demonstrate that (i) the agency "intentional[ly] or willful[ly]" violated the Act's requirements, and (ii) that she sustained "actual damages" (iii) "as a result of" that violation.  5 U.S.C. § 552a(g)(4).  As the Supreme Court held in *FAA v. Cooper*, 566 U.S. 284, 292-96 (2012), "actual damages" encompass only "actual pecuniary loss," and unless a plaintiff alleges and can show "out-of-pocket losses," the government retains sovereign immunity.  At best, Plaintiff's alleged damages stem from the roughly seven-month period between when the VA initially produced the single-page record on March 19, 2021 and re-produced it with fewer redactions on November 3, 2021 during which period Plaintiff claims she was unable to make herself "more competitive for future job opportunities."  Am. Compl. at 4 (ECF 27).  Such a speculative and conclusory assertion is not sufficient to state "actual pecuniary loss."  The Supreme Court and the Fourth Circuit have both recognized that the failure to establish actual monetary damages is fatal to Privacy Act claims.  *Cooper*, 566 U.S. at 295 (quoting 5 U.S.C. § 552a(g)(4)(A)); *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 205 (4th Cir. 2009) (establishing actual damages is "a prerequisite to recovering statutory damages").

### III.     Lewis's Privacy Act claims should be dismissed pursuant to Rule 12(b)(6), or in the alternative, summary judgment should be granted.

A complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8.  To be facially plausible, a complaint must contain enough facts that would permit a court to infer that the defendant is liable for the alleged misconduct.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other

words, "[t]he plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.' *Id.* It requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis v. Giacomelli*, 588 F.3d 186, 194 (4th Cir. 2009) (quoting *Iqbal*, 550 U.S. at 678).

Lewis has asserted several Privacy Act claims under 5 U.S.C. § 552a(g)(1)(C) and 5 U.S.C. § 552a(g)(1)(D). To succeed on a § 552a(g)(1)(C) claim, Lewis must establish that:

> (1) [she] has been aggrieved by an adverse determination; (2) the [agency] failed to maintain [her] records with the degree of accuracy necessary to assure fairness in the determination; and (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination . . ..

*Gard v. U.S. Dept. of Educ.*, 789 F. Supp. 2d 96, 106 (D.D.C. 2011) (quoting *Chambers v. Dept. of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009)). Section 552a(g)(1)(D), in contrast, is a "catch-all" provision, creating civil causes of action for violations not otherwise described in §§ 552a(g)(1)(A)–(C). *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) (citing *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988)). Only monetary damages are available under § 552a(g)(1)(D); a plaintiff cannot obtain declaratory or injunctive relief. *Id.* For her § 552a(g)(1)(D) claims, Lewis must show:

> (1) the agency violated another provision of the Privacy Act, (2) the violation was intentional or willful, and (3) the violation had an adverse effect on [Lewis].

*Dick v. Holder*, 67 F. Supp. 3d 167, 177 (D.C. Cir. 2014) (citing *Paige v. Drug Enf't Admin.*, 665, F.3d 1355, 1358–59 (D.C. Cir. 2012)).

   A. <u>Lewis's Privacy Act claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because the agencies have not waived sovereign immunity.</u>

For claims under both § 552a(g)(1)(C) and § 552a(g)(1)(D), Lewis may only prevail if she proves that an agency violated the provisions intentionally or willfully. *Gard v. U.S. Dept. of*

*Educ.*, 789 F. Supp. 2d 96, 105 (D.D.C. 2011).  Without claims of intentional behavior, the agencies have not waived sovereign immunity under the Privacy Act and the Court lacks jurisdiction over the claims.  *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42, 62 (D.C. Cir. 2019).  To begin, Lewis has failed to allege that the agencies acted intentionally or willfully, and therefore, her Privacy Act claims should be dismissed for lack of jurisdiction.  *Id.*; *Gard*, 789 F. Supp. 2d at 105.  But even if she did allege an agency acted willfully, she has failed to show the other elements of her claims, and therefore, all of Lewis's Privacy Act claims should be dismissed, or in the alternative, summary judgment should be granted.

      B.   <u>Lewis's Fifth Cause of Action should be dismissed for failure to state a claim under Rule 12(b)(6), or in the alternative, summary judgment should be granted for the Service.</u>

Lewis's Fifth Cause of Action asserts a claim against the Service under 5 U.S.C. § 552a(g)(1)(C) for failure to update her agency separation records.  Doc. No. 37, ¶ 5.  Specifically, Lewis alleges that the Service failed to timely generate her form SF-50,[1] and she believes her email address has been improperly kept active.  Doc. No. 28 at 6–7; Doc. No. 27-2 at 36–48.  Yet Lewis fails to allege that she has been aggrieved by an adverse determination, and therefore, her claim should be dismissed.  *Gard v. U.S. Dept. of Educ.*, 789 F. Supp. 2d 96, 106 (D.D.C. 2011).  She asserts only that the delay in her SF-50 "impacted [her] ability to apply for other federal government positions," and suggests that she could not obtain this information during her Merit Systems Protection Board (MSPB) proceedings.  Doc. No. 28 at 6–7.  She has alleged no determination that was made, much less an adverse one.  *Id.*

---

[1] The Service uses Standard Form 50 (SF-50) when an employee separates from the Service. Declaration of Jee Ahn (Ahn Decl.), ¶ 4.

But even if the facts she alleges could be construed as an adverse determination under the Privacy Act, she has failed to plead specific facts establishing a causation between any construed alleged violations and any construed alleged adverse determinations.  *Gard*, 789 F. Supp. 2d at 106.  The Court could construe her claims as alleging an adverse determination either (1) in her failure to obtain some unspecified employment or (2) in her failure to obtain information during her MSPB proceedings.  That said, these construed claims relate to her employment disputes. While the Civil Service Relief Act (CSRA) does not always preempt the Privacy Act, "the Privacy Act is not to be used as an end run around the comprehensive remedial scheme created by the CSRA to address federal employment disputes."  *Id.* (citing *Hubbard v. EPA*, 809 F.2d 1, 5 (D.C. Cir. 1986).  Lewis has provided no facts to support even a reasonable inference that any purported alleged violations caused a possible adverse determination, particularly in the employment context. *Id.*

Finally, even if the Court determines she has adequately plead causation and an adverse determination, the Service has maintained her records with the level of accuracy required by the Privacy Act.  Lewis's SF-50 was generated in accordance with Service procedures.  SF-50s are automatically generated after the close of the pay period in which the employee separated. Declaration of Jee Ahn (Ahn Decl.), ¶ 5.  Lewis separated during 2017 Pay Period 21, which ran from October 10, 2017, through October 23, 2017.  *Id.*, ¶ 6.  Lewis's SF-50 was generated after the 2017 Pay Period 21 closed.  *Id.*, ¶ 7.

As for her email address, once an employee separates from the Service, the employee's email account is automatically restricted from sending emails, and the address is removed from the Service's Global Address List.  *Id.*, ¶ 8.  Until October 1, 2021, Service retained the email address of separated employees within the HR Connect system, even though the account could no

longer send emails.  *Id.*, ¶ 9.  But as of October 1, 2021, the Service now removes the email addresses of separated employees from the HR Connect system.  *Id.*, ¶ 10.  For the Privacy Act claims about both her SF-50 and her email, the Service has maintained her records with the required accuracy.  As a result, because these records were accurate, the Service could not possibly have relied on *inaccurate* records for any adverse determinations, and the Service is entitled to summary judgment on this cause of action.  *Gard*, 789 F. Supp. 2d at 106.

C. Lewis's Eighth Cause of Action should be dismissed for failure to state a claim under Rule 12(b)(6), or in the alternative, summary judgment should be granted for the BEP.

In her Eighth Cause of Action, Lewis asserts a claim against BEP under 5 U.S.C. § 552a(g)(1)(D) for an alleged failure to provide the appropriate Privacy Act Statement under 5 U.S.C. § 552a(e)(3) before soliciting her social security number, address, email address, and date of birth.  Doc. No. 37, ¶ 8.  According to her complaint, after her contractor appointment with BEP ended, someone from BEP contacted Lewis requesting this information, informing Lewis that it was necessary to remove her from the BEP systems.  Doc. No. 28 at 10.  Lewis attaches, as an exhibit, screen shots of a text message exchange, ostensibly between her and a BEP employee or contractor.  Doc. No. 27-2 at 74–75.

The Privacy Act requires an agency to inform an individual whom it asks to supply information (1) the authority which authorizes the solicitation of the information and whether disclosure is mandatory or voluntary; (2) the principal purpose for which the information is to be used; (3) the routine uses which may be made of the information; and (4) any effect on the individual (if any) of not providing the requested information.  5 U.S.C. § 552a(e)(3).  To succeed on a claim under § 552a(e)(3) and § 552a(g)(1)(D), Lewis must prove that BEP failed to notify her of the principal purpose of the solicitation, that BEP's failure had an adverse effect on her, and

that BEP willfully or intentionally violated this provision.  *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 44 (D.D.C. 2009) (citing *Cardamone v. Cohen*, 241 F.3d 520, 529 (6th Cir. 2001).

      Lewis appears to allege that BEP did not have the authority to request her information for her departure.  Doc. No. 28 at 9.  She claims that "for most information systems" this information is not needed for departure processing.  *Id.* at 10.  Whether or not the BEP has authority to collect the information is a question of law, and therefore the Court need not accept this fact as true.  *See, e.g.*, *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021).  Even so, Lewis has failed to allege any actual adverse effect caused by this specific BEP request for information.  Her allegation that "Treasury officials had access to [her] PII" is not an adverse effect; Lewis's status as an employee of the Service (Doc. No. 28 at 6), a contractor of the BEP (Doc. No. 28 at 10), and a delinquent taxpayer (Doc. No. 28 at 14) gives the Treasury and its agencies a myriad of proper purposes to have access to her Personal Identifiable Information and access is not an adverse effect.  *See* 5 U.S.C. § 552a(b)(3); 57 Fed.Reg. 13900, 13903 and 14035–60 (1992).  The cited "soft pulls" on Lewis's credit report are similarly not an adverse effect, as the Service routinely conducts these credit checks on individuals to verify identification.  *See, Internal Revenue Service CP01B Notice*, https://www.irs.gov/pub/notices/cp01b_english.pdf.  Consistent with the *Ashcroft* case, Lewis therefore has not adequately pleaded a cause of action, and the Court should dismiss this count against BEP.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

      Yet even if the request for information originated from BEP,[2] and assuming that Lewis did identify an adverse effect, the Court should grant BEP summary judgment as to this count.  Lewis's

---

[2] The text messages reveal that the name of the individual was saved by Lewis as "[Redacted] - BEP COR."  Doc. No. 27-2 at 74–75.  Without more information, the BEP cannot confirm that

(continued...)

own submissions prove that BEP *did* notify her of the principal purpose of the solicitation. According to the text messages she attached, the BEP COR provided her with the specific purpose of the request:

> Please call me ASAP.  I need info from you to take you out of the system. . . . I need your Social Security number, your address, your phone number, and your email. . . . This is the same information I needed to put you into the system. . . . This is for you to get cleared out of BEP for your PIV card so that you can get a new PIV card at where you are now.

Doc. No. 27-2 at 74–75.  The BEP also provides notice to contractors of their purpose and authority to request personal identifiable information when the contractor is onboarded to the BEP. Declaration of Venancio R. Biela, Jr. (Biela Decl.), ¶¶ 4–12.  Contractors are statutorily required to provide their Social Security Numbers to the Federal Agencies with which they work.  31 U.S.C. § 7701(c); 26 U.S.C. § 6109.

Lewis appears to argue that the purpose of BEP's request was impossible.  Doc. No. 28 at 10.  Still, the COR who processed Lewis's departure lacked access to the onboarding forms and needed the information to process her departure forms.  Biela Decl., ¶¶ 13–16.  The BEP is directed by statute to use her Social Security Number to verify that records are kept accurate.  31 U.S.C. § 7701(c).  So, because BEP *did* notify Lewis of the principal purpose of collecting her information, summary judgment should be granted for the BEP.  *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 44 (D.D.C. 2009) (citing *Cardamone v. Cohen*, 241 F.3d 520, 529 (6th Cir. 2001).

> D. <u>Lewis's Nineth Cause of Action should be dismissed for failure to state a claim under Rule 12(b)(6), or in the alternative, summary judgment should be granted for the Service.</u>

---

this person was, in fact, a BEP COR.  For this motion, the BEP is accepting, without admitting, that this person is a BEP COR as alleged by Lewis.  *See Francis v. Giacomelli*, 588 F.3d 186, 194 (4th Cir. 2009).

For her Nineth Cause of Action, Lewis asserts a Privacy Act claim against the Service under 5 U.S.C. § 552a(g)(1)(D) for allegedly accessing and modifying her USAJOBS account. Doc. No. 37, ¶ 9.  She believes that the Service violated 5 U.S.C. § 552a(b).  Doc. No. 28 at 11. This provision prohibits federal agencies from "disclos[ing] any record which is contained in a system of records by any means of communication to any person."  5 U.S.C. § 552a(b).  Thus, there must be a "record" and it must be maintained in a "system of records."  *See, e.g.*, *Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012).  Under the Privacy Act, a "system of records" is defined as:

> a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]

5 U.S.C. § 552a(a)(5); *Paige*, 665 F.3d 1359.  Simply because a record is capable of being retrieved by a personal identifier does not transform a group of records into a "system of records."  *Henke v. U.S. Dep't of Com.*, 83, F.3d 1453, 1460–61 (D.C. Cir. 1996).  The agency must *in practice* retrieve information about individuals by reference to their personal identifier.  *Id.*

USAJOBS is a system of records, however, it is a system of records under the control of the United States Office of Personnel Management (OPM).  *See, Privacy Impact Assessment for USAJOBS*, OPM, https://www.opm.gov/information-management/privacy-policy/privacy-policy/usajobs-pia.pdf.  The Service does not maintain control of these records.  Ahn Decl., ¶ 15. The Service has access to the USA Staffing hiring system to process applications submitted to USAJOBS in response to job announcements from the Service.  *Id.*, ¶ 16.  Even so, this access does not allow for any access to applicant information in USAJOBS.  *Id.*  The information retrieved by the Service is not retrieved by any personal identifier: rather, the Service retrieves information based on responses to a job announcement.  *Id.*, ¶¶ 17–18.  Thus, because the Service does not

retrieve individual information by reference to a personal identifier, USAJOBS is not a system of records under the control of the Service.  *Henke*, 83, F.3d at 1460–61.  Because USAJOBS is not a system of records under the control of the Service, Lewis cannot prove a violation of the Privacy Act by the Service.  *Paige*, 665 F.3d 1359.  Her Nineth Cause of Action should therefore be dismissed, or in the alternative, summary judgment should be granted for the Service.  *Id.*

E. Lewis's Eleventh Cause of Action should be dismissed for failure to state a claim under Rule 12(b)(6), or in the alternative, summary judgment should be granted for the Service.

Lewis's Eleventh Cause of Action asserts a Privacy Act claim against the Service under 5 U.S.C. § 552a(g)(1)(C) for failing to process her "Fresh Start Application."  Doc. No. 37, ¶ 11.  To begin, there is no "Fresh Start Application"; the Fresh Start Program is a group of changes to the Service collection policies.  Ahn Decl., ¶¶ 19–21.  Individuals can apply for the various types of relief provided by the Fresh Start Program, including offers in compromise, penalty abatements, and installment agreements.  *Id.*, ¶ 21.

For this claim, Lewis alleges that she was adversely affected because the Service did not approve her application.  Doc. No. 27 at 15.  She states that she submitted the application in late September 2019, and the application was not processed by the time she began contacting the Taxpayer Advocate Service in December 2019.  But she does not allege that the Service *denied* her application.  *Id.*  Nor does she allege that the few months between when she applied and when she began inquiring about the application constituted constructive denial of her application. [3]  *Id.*

---

[3] The undersigned is prohibited by 26 U.S.C. § 6103 from discussing the results of Lewis's application.  Section 6103 prohibits officers and employees of the United States, including the undersigned, from disclosing "any return or return information obtained by [her] in connection with [her] service" as an officer or employee of the United States. 26 U.S.C. § 6103(a)(3). "Return information" includes a wide variety of information and data which has been "received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or
(continued...)

Thus, she has not alleged an adverse determination, much less a determination caused by reliance on any inaccurate records, and her claim should be dismissed. *Gard v. U.S. Dept. of Educ.*, 789 F. Supp. 2d 96, 106 (D.D.C. 2011) (quoting *Chambers v. Dept. of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009)).

Furthermore, to the extent that she attempts to challenge her tax liability through the Privacy Act, the Court lacks jurisdiction. 26 U.S.C. § 7852(e) (providing that 5 U.S.C. § 552a(g), among other subsections, "shall not be applied, directly or indirectly, to the determination of the existence or possible existence of liability (or the amount thereof) of any person for any tax, penalty, interest, fine, forfeiture, or other imposition or offense to which the provisions of this title apply.").

> **F.**   Lewis's Twelfth Cause of Action should be dismissed for failure to state a claim under Rule 12(b)(6), or in the alternative, summary judgment should be granted for TIGTA.

Finally, in her Twelfth Cause of Action, Lewis asserts a Privacy Act claim against TIGTA under 5 U.S.C. § 552a(g)(1)(C) for allegedly removing or deleting the TIGTA complaint she filed on November 16, 2017. Doc. No. 37, ¶ 12; Doc. No. 28 at 15. Lewis cannot show that she was aggrieved by an adverse determination, and her claim should be dismissed. But even if she could prove that she was aggrieved, the Court should grant summary judgment for TIGTA because TIGTA has not removed or deleted the complaint she filed. Declaration of John Kirk (Kirk Decl.), ¶¶ 8–13; Declaration of Joel Weaver (Weaver Decl.), ¶¶ 5–11.

---

with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." § 6103(b)(2); (definition of "return information"). Disclosure of such information is permitted in some judicial and administrative tax proceedings, but FOIA and Privacy Act cases are not included in such permissible uses because FOIA they are not proceedings for tax administration. § 6103(h)(4); *see also* § 6103(b)(4) (definition of "tax administration").

To succeed on a Privacy Act claim under 5 U.S.C. § 552a(g)(1)(C), Lewis must, among other things, prove that TIGTA has failed to maintain records as required by § 552a(e)(5), that she has been aggrieved by an adverse determination, and TIGTA's reliance on the alleged inaccurate record was the proximate cause of such adverse determination. *Gard v. U.S. Dept. of Educ.*, 789 F. Supp. 2d 96, 106 (D.D.C. 2011) (quoting *Chambers v. Dept. of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009)).

Lewis does not allege that she was "aggrieved by an adverse determination." She explains, instead, that she followed up on her complaint and the investigation was delayed, rather than terminated. Doc. No. 28 at 16. She does not allege that any adverse determination occurred, nor does she claim that the delay *caused* an adverse determination. *Id.* Indeed, in the exhibits she attached to the complaint, she shows that the TIGTA complaint was processed at least by February 26, 2018. Doc. No. 27-2 at 142. Declarant Weaver explains an administrative workload triggered mistake contributing to a delay in TIGTA acting on the complaint. Weaver Decl. ¶¶ 8–9. Thus, at most, Lewis's complaint was delayed between when she submitted it on November 16, 2017, to the date of the email on February 26, 2018, for a total of 102 days. In those months are many federal and religious holidays (Thanksgiving, Hanukkah, Christmas Eve, Christmas Day, Kwanzaa, New Year's Eve, New Year's Day, Martin Luther King, Jr. Day, Presidents' Day). A slight delay, as here, is not an adverse determination. *See* OPM Guidelines, 40 Fed.Reg. at 28,969 ("An adverse action is one resulting in the denial of a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been expected to have been given if the record had not been deficient."). "It would make little sense to hold an agency liable for noncompliance with subsection (e)(5) . . . if the agency either makes no determination at all or makes an adverse determination without using the disputed record." *Deters v. U.S. Parole*

*Comm'n,* 85 F.3d 655, 660–61 (D.C. Cir. 1996).  For these reasons, the Twelfth Cause of Action should be dismissed for failure to state a claim.

But even if the Court could consider this delay an adverse determination, TIGTA did not remove or delete the complaint Lewis submitted on November 16, 2017.  TIGTA has located this record.  Kirk Decl., ¶ 10; Exhibit A.  TIGTA did not delete the original complaint, as Lewis claims. *Id.*  To prevail on her claim, Lewis must prove that TIGTA's reliance on an alleged inaccurate record proximately caused her adverse determination.  *See, e.g., McCready v. Nicholson*, 465 F.3d 1, 10 (D.C. Cir. 2006).  TIGTA proves that it has maintained the accuracy of her records, and so reliance on inaccurate records could not have proximately caused any adverse determination she could identify.  Kirk  Decl., ¶ 10: Exhibit A.  Thus, summary judgment should be granted in favor of TIGTA.

## Conclusion

As to Lewis's First Cause of Action, TIGTA is properly withholding documents under FOIA Exemptions 6 and 7(C).  Thus, summary judgment should be granted for TIGTA.

As to Lewis's Third Cause of Action, Plaintiff's claims against the VA are moot, and this Court should dismiss Plaintiff's claims or grant summary judgment for the VA.

For her remaining Privacy Act claims, despite amending her complaint, Lewis still fails to allege facts, specifically willfulness or intent, that support a waiver of sovereign immunity, and therefore, her Privacy Act claims against the Treasury Defendants should be dismissed for lack of subject matter jurisdiction.  Yet even if she could establish sovereign immunity, Lewis fails to state Privacy Act claims upon which relief may be granted and therefore her claims should be dismissed, or summary judgment should be granted for the Treasury Defendants.

Dated: January 18, 2022

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General


*/s/ Emily K. Miller*
EMILY K. MILLER (Ky. Bar No. 97725)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-353-7509 (v)
Emily.K.Miller@usdoj.gov
*Counsel for the Treasury Defendants*


Erek L. Barron
United States Attorney

*/s/    Rebecca A. Koch*
REBECCA A. KOCH (Bar No. 802108)
Assistant United States Attorney
6406 Ivy Lane, Suite 800
Greenbelt, Maryland 20770
Telephone: 301-344-4433
Facsimile: 410-962-2310
Rebecca.Koch@usdoj.gov
*Counsel for the VA*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to those parties registered to receive it.

> KIESHA D. LEWIS
> 2305 Prima Way
> Bowie, Maryland 20721
> *Plaintiff*

> /s/
> REBECCA KOCH
> Assistant United States Attorney