IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KIESHA DANIELLE LEWIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEPT. OF TREASURY, ET AL., ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 8:20-cv-00494-TDC |

# DECLARATION OF JOHN KIRK

I, John Kirk, pursuant to the provisions of 28 U.S.C. § 1746(2), declare as follows:

1. I am the Special Agent in Charge (SAC) of the Fraud and Schemes Division (FSD) for the Office of Investigations for the Treasury Inspector General for Tax Administration (TIGTA) in Washington, D.C. I have been employed by TIGTA, in that capacity, since April 12, 2020.

2. The Complaint Management Team (CMT) is currently contained within FSD. Prior to October 1, 2021, CMT was part of the Operations Division for the TIGTA Office of Investigations.

3. Pursuant to the Inspector General Act, TIGTA is responsible for conducting criminal and administrative investigations into alleged misconduct and criminal violations by Internal Revenue Service employees. Although the primary focus of the Office of Investigations is to investigate potential criminal violations, some allegations that are received by the Office of Investigations do not rise to the level of a criminal violation. However, in the context of investigating an IRS employee for allegations of administrative misconduct, a TIGTA Special Agent may obtain evidence indicating that the IRS employee

1

Exhibit 2

violated the law and could be criminally prosecuted for this offense.  Even if no criminal violations are identified at the outset of an investigation, it is not until the investigation is completed and all of the information and documents obtained during the course of the investigation are reviewed and analyzed, that a final determination is made as to whether any criminal violations have been committed by the IRS employee.

4.  As part of its responsibilities, CMT is the central clearinghouse for complaints made to TIGTA alleging criminal or administrative misconduct of IRS employees and is responsible for processing complaints received at TIGTA Headquarters.

5.  As part of my official duties, I supervise the Complaint Management Team, and I am familiar with CMT's complaint processing policies, practices, and procedures.

6.  When a complaint is submitted to TIGTA through TIGTA's website, an email is generated and sent to CMT.

7.  Prior to October 21, 2021, the email address for CMT was *TIGTA Investigations Complaints Unit (Complaints@tigta.treas.gov).

## 2017 TIGTA COMPLAINT

8.  I have reviewed the emails related to Keisha Lewis's 2017 complaint to TIGTA.

9.  Lewis submitted a complaint to TIGTA through the online portal on TIGTA's website on November 16, 2017.

10. On November 16, 2017, CMT received an email containing the information Lewis submitted online.  A copy of that email is attached here as Exhibit A.

11. Consistent with CMT policies, practice, and procedures, the email was forwarded to TIGTA's Internal Affairs Division (IAD) for review because Lewis's complaint made allegations against an Internal Revenue Service (IRS) "Senior Manager."  IAD (now the Special

Investigation Unit) is responsible for handling complaints against senior IRS officials. Due to staffing in IAD and because of the grade of the IRS employee referenced in Lewis's complaint, IAD returned the complaint to CMT for assignment to an appropriate field office.

12. CMT then, consistent with its policies, practice, and procedures, forwarded Lewis's complaint to, as it was named at the time, the Southern Field Division.

13. Managers within the Southern Field Division, Deputy Special Agent in Charge Gary Smith and Assistant Special Agent in Charge (ASAC) Mark Morini, forwarded Lewis's complaint to the Acting ASAC of the Atlanta Service Center, Joel Weaver, for assignment to a field agent. A copy of the email forwarded to Joel Weaver is attached here as Exhibit B.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on January 7, 2022, in Washington, D.C.

John M. Kirk
Digitally signed by John M. Kirk
Date: 2022.01.09 08:46:07 -05'00'

John Kirk
Special Agent in Charge
Fraud and Schemes Division
Office of Investigations
Treasury Inspector General for Tax Administration

Exhibit A

| | |
|---|---|
| From: | kieshalewis@hotmail.com |
| Subject: | TIGTA Complaint Form |
| Date: | Thursday, November 16, 2017 12:42:57 PM |

--- Name(s): Kevin McCreight

Grade(s): IR-01

Position(s): Senior Manager

Function(s): IT, EPMO

City/State(s): Atlanta, GA

Complaint: Kiesha D. Lewis kieshalewis@hotmail.com TO: US Department of the Treasury Internal Revenue Service and all parties involved FROM: Kiesha D. Lewis SUBJECT: Retaliation in the form of a Human Resource Management Adverse Action This memorandum is being submitted to formally dispute the Fiscal Year 2017 End of Year Performance Appraisal assessment provided by my supervisor on record Kevin McCreight. Mr. McCreight harassed me during my tenure as his employee through to my resignation from the Internal Revenue Service (IRS). His harassment and retaliatory actions proved to be overbearing and has continued to affect my ability to move forward in my professional career and life due to the negative impact he is impeding on me by willfully rating me as a Meets Expectations in my Performance Appraisal. BACKGROUND. I, Kiesha D. Lewis, accepted an offer of employment as a Frontline Manager to the Enterprise Program Management Office Web Applications Division and entered on duty to this assignment in January 2017. Shortly after reporting, I completed a preliminary assessment of the team I would be managing and outlined the following areas I believed I needed to address to have the most positive impact on steering the Web Apps Program Management and Integration team towards its desired goals and success areas. I provided the listing (highlighted below) to Mr. McCreight. Strategy & Planning (Section/Organization as a whole) â€¢ Lack of Resources â€¢ Lack of Program Management Structure â€¢ Non-defined/unclear Roles and Responsibilities â€¢ Lack of Standard Operating Procedures â€¢ Lack of Web Apps "Front Door" â€¢ Not utilizing available technology to lesson Administrative Burden â€¢ Lack of Data Call Management (no list of re-occurring data calls and due dates) â€¢ Web Apps Operating Model needing to be re-visited and refined â€¢ Workforce Management - Lack of duties/expectations for each position â€¢ Lack of boundaries between S&P and the Web Apps front office Contract Administration â€¢ Manually tracking procurement requests â€¢ No list of current contracts â€¢ No contract administration SOPs â€¢ Lack of contract financials (e.g. burn rate, projections, and actuals) â€¢ Lack of Procurement Strategy â€¢ Lack of a GTM/GTR and Contract Administrator Product Prioritization & Planning â€¢ Lack of Program Management Structure â€¢ Lack of a Product Prioritization & Planning 'Beginning to End' process â€¢ Lack of SOP â€¢ Lack of Product Prioritization & Planning Strategy OMB Reporting/Budget â€¢ Lack of Program Management Structure â€¢ Lack of resources with proper skill set â€¢ Lack of SOPs â€¢ Lack of artifacts to include Financial Strategy, Spend Plan, Labor Charging Process â€¢ Lack of a process of verifying SETR charges to include requesting and using overtime â€¢ Lack of Internal Controls â€¢ Lack of budget projection/forecast process â€¢ Unclear and unaligned costing methodology (to include tracking & projection) â€¢ Lack of alignment with Ex. 300 & Budget Process Listed below is a high-level overview of my accomplishments during my tenure with Web Apps, which are also outlined in my End of Year Self-Assessment. General

Exhibit 2

• Conducted project management training sessions • Developed and implemented the Web Apps 'Front Door' for the IRS Intranet Site • Re-designed the process and format for status reporting for Strategy & Planning • Conducted Workforce Planning training sessions • Developed and documented Workforce Shortage Impact Analysis • Succession Planning Documents Product Planning • Developed and implemented new Product Planning/Prioritization Process • Oversaw the development and implementation of a process to review and update the Web Apps Backlog quarterly CSR Demo Developed and Implemented a Get-Well & Implementation Plan to include: • Project Charter • WBS • Lessons Learned Document • Status Reporting Quad Chart OMB Reporting/E300 • Completed Alternative Analysis Document • Approved BCR & TechStat Memo • Oversaw the development of the Operational Metrics Financial/Budget • Developed Web Apps Budget Book that included: o Spend Plan o Labor Analysis Report o Travel o Supply o Formulation and Execution o Burn Rate Variances • Developed Funding Request Process • Developed and Implemented Labor Analysis Process • Developed and Implemented Web Apps Overtime Request Process • Oversaw the development and implementation of a Web Apps Financial Site, to include Access controls. • Developed a Reimbursement process (a process for Web Apps to recoup costs from other projects and programs) • Outlined a Web Apps contract invoice "Front Door" process • Developed a Resource Utilization Report Template Contract Administration • Developed and Implemented Contract Status Reporting and Meetings • Developed and Implemented process to track and close procurement-related action items • Developed Web Apps BPA Lunch and Learn presentation document • Developed and Implemented Burn-rate methodology • Developed and Implemented BPA funding tracking • Developed and Implemented IGCE Template • Developed and presented a BPA Contingency Plan • Oversaw the awarding of three BPA task order awards • Oversaw the development and implementation of GTM/COR and Vendor Meetings • Developed and Implemented Contract Manager Meetings for Web Apps managers • Developed and Implemented a process for Delivery Partners to request to use the Web Apps BPA For each process and procedure I developed and implemented, I received praise and encouragement from both my immediate manager, Kevin McCreight and the Web Apps Executive, Ramona Henby. During the 10/10/17 Web Apps Budget Meeting, chaired by Ms. Henby, I was requested to highlight these accomplishments during the Monthly EPMO Budget Meeting, with Linda Gilpin on Friday, 10/13/17, which I did. Ms. Gilpin expressed that she was very pleased with what had been developed and encouraged Web Apps to share with the rest of the EPMO; which was currently happening shortly before my resignation. Although I was praised by executives on my accomplishments, I endured continuous harassment and hostility in the workplace administered by Mr. McCreight and any attempt on my part to resolve the matter, to include escalating to Mrs. Henby was met with total ignoring of the issues by Ms. Henby and Mr. McCreight's retaliatory actions coupled with his creation of a hostile work environment. ADDITIONAL INFORMATION. In addition to providing Mr. McCreight with a high-level gap analysis assessment, I also provided him, via email, outlines of specific concerns we could address together or in silo at his action. ï¡˜ For example, On March 20, 2017, I expressed concern about the management and oversight of a task order. Due to the lack of management and oversight, a contractor continued working and charging after the funds expired. Mr. McCreight approved the work and continued payments which led to a contract cost overrun. On April 3, 2017, I provided Mr. McCreight with a list of ways we could avoid this for occurring again and the concerns I had from an organizational perspective. After providing this feedback, I was met with harassing comments, gestures and most importantly, Mr. McCreight's verbal thrust for me to seek other employment opportunities; ï¡˜ On April 12, 2017, during my 8:00 AM One-on-One meeting with Mr. McCreight, he specifically informed

Exhibit 2

me that I "needed to find employment opportunities elsewhere" because he felt that I didn't trust him; ïƒ˜ One week later during the April 19th One-on-One meeting, Mr. McCreight informed me that he was going to look within the EPMO to find another opportunity for me; ïƒ˜ On April 24, 2017, I was notified by Ms. Henby via email that I was going on detail to FATCA. I respectfully declined this offer as it did not align with my current career goals. ïƒ˜ I had applied to and was selected for two other detail opportunities (one in IRS and one other at the US Treasury) that would have allowed me to exit the hostility Mr. McCreight was imposing on me and Ms. Henby could not lead him to cease. However, the two details I had arranged were blocked by Ms. Henby's lack of support and EPMO Executive Management; ïƒ˜ Due to this dereliction of management, I was forced to continue enduring hostility in the workplace and retaliation from Mr. McCreight. ïƒ˜ On or around 7/31/17, I notified Ms. Henby of Mr. McCreight's behaviors towards the Strategy and Planning Team's attempt to resolve some of our questionable Federal Acquisition Regulations (FAR) practices, such as attempting to have contractors not cleared by security working on contract tasks or having government staff entering a 'personal services' relationship with contractors. After I notified Ms. Henby in writing of my concerns, Mr. McCreight retaliated by cancelling a discussion with the other Web Apps Manager to address possible FAR violations, after first agreeing to the meeting. It is my understanding he used his chant of cancellation to assassinate my character, although when approached, Mr. McCreight denies these assertions; ïƒ˜ On 8/14/2017, in a meeting to discuss Mr. McCreight's decision to deny my detail request, I was told that even though he still believed that I needed to seek other employment opportunities, that only promotion opportunities, not laterals would be approved. However, during our 9/27/2017 One-on-One meeting, ïƒ˜ On 9/25/2017, I was selected for a job I never interviewed and I was forced to respectfully decline due to the inability to find out more about what my responsibilities would be and the team I would be working for, etc. During our 9/27/2017 One-on-One meeting, I was chastised for not accepting a GS-14 job offer because EPMO management has expended political capital getting it approved. ïƒ˜ On 10/11/17, during my One-on-One meeting with Mr. McCreight again interrogated me on my "plans" in regard to my seeking other employment opportunities. ïƒ˜ Shortly after this conversation I decided I needed to resign as I would not receive the support and honest positive reference I had earned while employed at the IRS Web Apps; ïƒ˜ Mr. McCreights's documented behaviors towards me continued even after I submitted my resignation despite my documented efforts to ensure that there was a smooth transition by developing a "managers only" SharePoint site that provided all information needed for both Web Apps management and the Strategy and Planning staff to include: o FY18 Commitments. I drafted for all employees and provided to Mr. McCreight. o Succession Planning. I developed both a Web Apps Strategy and Planning (S&P) Succession Plan and FLM Succession Training Plan. o Strategy and Planning Organization Document. I drafted an S&P org overview document, that provided an overview of the S&P organization. o Detail Tasks. I outlined tasks to be completed by the details that started the Monday of my last week. o SOPs. I drafted several SOPs for the processes and procedures that Web Apps was implementing. o Program Task Sheets. I created program task sheets for each program which outlined the major tasks being completed in each program. o FY17 Assessments. I completed for everyone including my matrixed and pathways employees ïƒ˜ Additionally, I once I notified management of my intent to resign, I was treated with disdain and continued harassment as I was following the out processing rules for IRS Employees exiting the service: o Mr. McCreight tried to change the date that I could turn in my equipment; o Mr. McCreight would not approve my helpdesk ticket to have my equipment picked-up; o Mr. McCreight insisted I reprimand an intern who followed the instructions of another manager. CONCLUSION. I request that my Performance Appraisal be updated to "Exceeds", if

Exhibit 2

not "Outstanding", to reflect my actual work efforts. As I outlined in my Self-Assessment, I met each of the "Exceeds" dates outlined in my commitments; all while being severely short-staffed and working in a hostile working environment. I would be remiss to not outline the accomplishments of each of the employees I had the pleasure of managing as well (also reflected in each of their assessments). It is my sincere hope that each of the employees who made these great strides and accomplishments were also not downgraded as a gesture of Mr. McCreight's retaliation towards me and my choice to resign. I am also requesting an outside entity to review Mr. McCreight's Self-Assessment and End of Year Assessment by both himself and his management, respectively, as my commitments were closely aligned with Mr. McCreight's as well. In the spirit of transparency and overall honesty I would like to ensure that he is not being rated highly for my accomplishments.

Contact Name: Kiesha D. Lewis

Contact Home Phone: 240-346-8398

Contact Email: kieshalewis@hotmail.com

------------------------------------------------------------------------ THE FOLLOWING IS THE CORRECT IP AND BROWSER INFORMATION ASSOCIATED WITH THE ABOVE FORM USER.

Sender's IP address is: 10.1.0.166

Sender's Hostname is: 10.1.0.166

Sender's Browser is: Mozilla/5.0 (Windows NT 10.0; Win64; x64; rv:56.0) Gecko/20100101 Firefox/56.0 ---

Exhibit 2

**Exhibit B**

| | |
|---|---|
| **From:** | Morini Jr Mark H TIGTA |
| **To:** | Weaver Joel D TIGTA |
| **Cc:** | Smith Gary L TIGTA |
| **Subject:** | FW: TIGTA Complaint Form |
| **Date:** | Friday, November 17, 2017 10:02:00 AM |

**From:** *TIGTA Investigations Complaints Unit
**Sent:** Friday, November 17, 2017 9:57 AM
**To:** Smith Gary L TIGTA <Gary.Smith@tigta.treas.gov>; Morini Jr Mark H TIGTA <Mark.Morini@tigta.treas.gov>
**Subject:** FW: TIGTA Complaint Form

**From:** Wood Erik T TIGTA
**Sent:** Friday, November 17, 2017 9:20 AM
**To:** *TIGTA Investigations Complaints Unit <Complaints@tigta.treas.gov>; Nicklyn Stanley J TIGTA <Stanley.Nicklyn@tigta.treas.gov>
**Subject:** RE: TIGTA Complaint Form

Good morning CMT,

IAD has reviewed this matter and we will exercise our first right of refusal due to our current staffing and the grade level of the subject. Please forward this matter to the appropriate field division for their review.

Thank you,

Erik Wood
Assistant Special Agent in Charge
TIGTA, IAD
(202) 927-7243 (Desk)
(917) 577-8441 (Cell)

**From:** *TIGTA Investigations Complaints Unit
**Sent:** Friday, November 17, 2017 8:41 AM
**To:** Nicklyn Stanley J TIGTA <Stanley.Nicklyn@tigta.treas.gov>; Wood Erik T TIGTA <Erik.Wood@tigta.treas.gov>
**Subject:** FW: TIGTA Complaint Form

Exhibit 2

**From:** kieshalewis@hotmail.com [mailto:kieshalewis@hotmail.com]
**Sent:** Thursday, November 16, 2017 12:43 PM
**Subject:** TIGTA Complaint Form

--- Name(s): Kevin McCreight

Grade(s): IR-01

Position(s): Senior Manager

Function(s): IT, EPMO

City/State(s): Atlanta, GA

Complaint: Kiesha D. Lewis kieshalewis@hotmail.com TO: US Department of the Treasury Internal Revenue Service and all parties involved FROM: Kiesha D. Lewis SUBJECT: Retaliation in the form of a Human Resource Management Adverse Action This memorandum is being submitted to formally dispute the Fiscal Year 2017 End of Year Performance Appraisal assessment provided by my supervisor on record Kevin McCreight. Mr. McCreight harassed me during my tenure as his employee through to my resignation from the Internal Revenue Service (IRS). His harassment and retaliatory actions proved to be overbearing and has continued to affect my ability to move forward in my professional career and life due to the negative impact he is impeding on me by willfully rating me as a Meets Expectations in my Performance Appraisal. BACKGROUND. I, Kiesha D. Lewis, accepted an offer of employment as a Frontline Manager to the Enterprise Program Management Office Web Applications Division and entered on duty to this assignment in January 2017. Shortly after reporting, I completed a preliminary assessment of the team I would be managing and outlined the following areas I believed I needed to address to have the most positive impact on steering the Web Apps Program Management and Integration team towards its desired goals and success areas. I provided the listing (highlighted below) to Mr. McCreight. Strategy & Planning (Section/Organization as a whole) â€¢ Lack of Resources â€¢ Lack of Program Management Structure â€¢ Non-defined/unclear Roles and Responsibilities â€¢ Lack of Standard Operating Procedures â€¢ Lack of Web Apps "Front Door" â€¢ Not utilizing available technology to lesson Administrative Burden â€¢ Lack of Data Call Management (no list of re-occurring data calls and due dates) â€¢ Web Apps Operating Model needing to be re-visited and refined â€¢ Workforce Management - Lack of duties/expectations for each position â€¢ Lack of boundaries between S&P and the Web Apps front office Contract Administration â€¢ Manually tracking procurement requests â€¢ No list of current contracts â€¢ No contract administration SOPs â€¢ Lack of contract financials (e.g. burn rate, projections, and actuals) â€¢ Lack of Procurement Strategy â€¢ Lack of a GTM/GTR and Contract Administrator Product Prioritization & Planning â€¢ Lack of Program Management Structure â€¢ Lack of a Product Prioritization & Planning 'Beginning to End' process â€¢ Lack of SOP â€¢ Lack of Product Prioritization & Planning Strategy OMB Reporting/Budget â€¢ Lack of Program Management Structure â€¢ Lack of resources with proper skill set â€¢ Lack of SOPs â€¢ Lack of artifacts to include Financial Strategy, Spend Plan, Labor Charging Process â€¢ Lack of a process of verifying SETR charges to include requesting and using overtime â€¢ Lack of Internal Controls â€¢ Lack of budget projection/forecast process â€¢ Unclear and unaligned costing methodology (to include tracking & projection) â€¢ Lack of alignment with Ex. 300 & Budget Process Listed below is a high-level overview of my accomplishments during my tenure with Web Apps, which are also outlined in my End of Year Self-Assessment. General

Exhibit 2

• Conducted project management training sessions • Developed and implemented the Web Apps 'Front Door' for the IRS Intranet Site • Re-designed the process and format for status reporting for Strategy & Planning • Conducted Workforce Planning training sessions • Developed and documented Workforce Shortage Impact Analysis • Succession Planning Documents Product Planning • Developed and implemented new Product Planning/Prioritization Process • Oversaw the development and implementation of a process to review and update the Web Apps Backlog quarterly CSR Demo Developed and Implemented a Get-Well & Implementation Plan to include: • Project Charter • WBS • Lessons Learned Document • Status Reporting Quad Chart OMB Reporting/E300 • Completed Alternative Analysis Document • Approved BCR & TechStat Memo • Oversaw the development of the Operational Metrics Financial/Budget • Developed Web Apps Budget Book that included: o Spend Plan o Labor Analysis Report o Travel o Supply o Formulation and Execution o Burn Rate Variances • Developed Funding Request Process • Developed and Implemented Labor Analysis Process • Developed and Implemented Web Apps Overtime Request Process • Oversaw the development and implementation of a Web Apps Financial Site, to include Access controls. • Developed a Reimbursement process (a process for Web Apps to recoup costs from other projects and programs) • Outlined a Web Apps contract invoice "Front Door" process • Developed a Resource Utilization Report Template Contract Administration • Developed and Implemented Contract Status Reporting and Meetings • Developed and Implemented process to track and close procurement-related action items • Developed Web Apps BPA Lunch and Learn presentation document • Developed and Implemented Burn-rate methodology • Developed and Implemented BPA funding tracking • Developed and Implemented IGCE Template • Developed and presented a BPA Contingency Plan • Oversaw the awarding of three BPA task order awards • Oversaw the development and implementation of GTM/COR and Vendor Meetings • Developed and Implemented Contract Manager Meetings for Web Apps managers • Developed and Implemented a process for Delivery Partners to request to use the Web Apps BPA For each process and procedure I developed and implemented, I received praise and encouragement from both my immediate manager, Kevin McCreight and the Web Apps Executive, Ramona Henby. During the 10/10/17 Web Apps Budget Meeting, chaired by Ms. Henby, I was requested to highlight these accomplishments during the Monthly EPMO Budget Meeting, with Linda Gilpin on Friday, 10/13/17, which I did. Ms. Gilpin expressed that she was very pleased with what had been developed and encouraged Web Apps to share with the rest of the EPMO; which was currently happening shortly before my resignation. Although I was praised by executives on my accomplishments, I endured continuous harassment and hostility in the workplace administered by Mr. McCreight and any attempt on my part to resolve the matter, to include escalating to Mrs. Henby was met with total ignoring of the issues by Ms. Henby and Mr. McCreight's retaliatory actions coupled with his creation of a hostile work environment. ADDITIONAL INFORMATION. In addition to providing Mr. McCreight with a high-level gap analysis assessment, I also provided him, via email, outlines of specific concerns we could address together or in silo at his action. ϔ For example, On March 20, 2017, I expressed concern about the management and oversight of a task order. Due to the lack of management and oversight, a contractor continued working and charging after the funds expired. Mr. McCreight approved the work and continued payments which led to a contract cost overrun. On April 3, 2017, I provided Mr. McCreight with a list of ways we could avoid this for occurring again and the concerns I had from an organizational perspective. After providing this feedback, I was met with harassing comments, gestures and most importantly, Mr. McCreight's verbal thrust for me to seek other employment opportunities; ϔ On April 12, 2017, during my 8:00 AM One-on-One meeting with Mr. McCreight, he specifically informed

Exhibit 2

me that I "needed to find employment opportunities elsewhere" because he felt that I didn't trust him; ïƒ˜ One week later during the April 19th One-on-One meeting, Mr. McCreight informed me that he was going to look within the EPMO to find another opportunity for me; ïƒ˜ On April 24, 2017, I was notified by Ms. Henby via email that I was going on detail to FATCA. I respectfully declined this offer as it did not align with my current career goals. ïƒ˜ I had applied to and was selected for two other detail opportunities (one in IRS and one other at the US Treasury) that would have allowed me to exit the hostility Mr. McCreight was imposing on me and Ms. Henby could not lead him to cease. However, the two details I had arranged were blocked by Ms. Henby's lack of support and EPMO Executive Management; ïƒ˜ Due to this dereliction of management, I was forced to continue enduring hostility in the workplace and retaliation from Mr. McCreight. ïƒ˜ On or around 7/31/17, I notified Ms. Henby of Mr. McCreight's behaviors towards the Strategy and Planning Team's attempt to resolve some of our questionable Federal Acquisition Regulations (FAR) practices, such as attempting to have contractors not cleared by security working on contract tasks or having government staff entering a 'personal services' relationship with contractors. After I notified Ms. Henby in writing of my concerns, Mr. McCreight retaliated by cancelling a discussion with the other Web Apps Manager to address possible FAR violations, after first agreeing to the meeting. It is my understanding he used his chant of cancellation to assassinate my character, although when approached, Mr. McCreight denies these assertions; ïƒ˜ On 8/14/2017, in a meeting to discuss Mr. McCreight's decision to deny my detail request, I was told that even though he still believed that I needed to seek other employment opportunities, that only promotion opportunities, not laterals would be approved. However, during our 9/27/2017 One-on-One meeting, ïƒ˜ On 9/25/2017, I was selected for a job I never interviewed and I was forced to respectfully decline due to the inability to find out more about what my responsibilities would be and the team I would be working for, etc. During our 9/27/2017 One-on-One meeting, I was chastised for not accepting a GS-14 job offer because EPMO management has expended political capital getting it approved. ïƒ˜ On 10/11/17, during my One-on-One meeting with Mr. McCreight again interrogated me on my "plans" in regard to my seeking other employment opportunities. ïƒ˜ Shortly after this conversation I decided I needed to resign as I would not receive the support and honest positive reference I had earned while employed at the IRS Web Apps; ïƒ˜ Mr. McCreights's documented behaviors towards me continued even after I submitted my resignation despite my documented efforts to ensure that there was a smooth transition by developing a "managers only" SharePoint site that provided all information needed for both Web Apps management and the Strategy and Planning staff to include: o FY18 Commitments. I drafted for all employees and provided to Mr. McCreight. o Succession Planning. I developed both a Web Apps Strategy and Planning (S&P) Succession Plan and FLM Succession Training Plan. o Strategy and Planning Organization Document. I drafted an S&P org overview document, that provided an overview of the S&P organization. o Detail Tasks. I outlined tasks to be completed by the details that started the Monday of my last week. o SOPs. I drafted several SOPs for the processes and procedures that Web Apps was implementing. o Program Task Sheets. I created program task sheets for each program which outlined the major tasks being completed in each program. o FY17 Assessments. I completed for everyone including my matrixed and pathways employees ïƒ˜ Additionally, I once I notified management of my intent to resign, I was treated with disdain and continued harassment as I was following the out processing rules for IRS Employees exiting the service: o Mr. McCreight tried to change the date that I could turn in my equipment; o Mr. McCreight would not approve my helpdesk ticket to have my equipment picked-up; o Mr. McCreight insisted I reprimand an intern who followed the instructions of another manager. CONCLUSION. I request that my Performance Appraisal be updated to "Exceeds", if

Exhibit 2

not "Outstanding", to reflect my actual work efforts. As I outlined in my Self-Assessment, I met each of the "Exceeds" dates outlined in my commitments; all while being severely short-staffed and working in a hostile working environment. I would be remiss to not outline the accomplishments of each of the employees I had the pleasure of managing as well (also reflected in each of their assessments). It is my sincere hope that each of the employees who made these great strides and accomplishments were also not downgraded as a gesture of Mr. McCreight's retaliation towards me and my choice to resign. I am also requesting an outside entity to review Mr. McCreight's Self-Assessment and End of Year Assessment by both himself and his management, respectively, as my commitments were closely aligned with Mr. McCreight's as well. In the spirit of transparency and overall honesty I would like to ensure that he is not being rated highly for my accomplishments.

Contact Name: Kiesha D. Lewis

Contact Home Phone: 240-346-8398

Contact Email: kieshalewis@hotmail.com

------------------------------------------------------------------------ THE FOLLOWING IS THE CORRECT IP AND BROWSER INFORMATION ASSOCIATED WITH THE ABOVE FORM USER.

Sender's IP address is: 10.1.0.166

Sender's Hostname is: 10.1.0.166

Sender's Browser is: Mozilla/5.0 (Windows NT 10.0; Win64; x64; rv:56.0) Gecko/20100101 Firefox/56.0 ---

Exhibit 2