USDC- GREENBELT
'22 JAN 24 PM12:32

IN THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF
MARYLAND

Kiesha D. Lewis
2305 Prima Rd.
Bowie, MD 20721

Plaintiff,

v.

DEPT. OF TREASURY, ET AL.,

Defendant(s).

Case No. 8:20-cv-00494-TDC

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGEMENT**

The Plaintiff files this response in opposition to the Agency's motion to dismiss the complaint and the motion for a summary judgment. For the reasons set forth below, the Plaintiff respectfully request that the Court deny the Agency's motion.

## Argument

### I. TIGTA Reports

I defer to the Court's ruling if the stated FOIA exemptions apply to these records.

### II. Veteran's Affairs (VA) FOIA Response

In the VA's motion, they provided a copy of the records provided to me. It is my

belief that the there are two questions that remain, did the VA improperly or arbitrarily apply the FOIA exemptions and if I should be compensated for having to use a federal lawsuit to obtain these records.

On both occasions, when the VA responded to my FOIA request, they provided responses that were almost completely redacted; Exhibit A provides an example of the response provided to me. For each page, they asserted that certain FOIA exemptions prohibited them from providing this information to me and redacted most of the information.

In the Court's first decision, it was ruled that I had exhausted my administrative remedies for my second request, which equated to one record page. After this ruling, the VA decided to provide me more responsive records, for both requests.

Based on the VA's actions, I would contend that the VA is admitting that they arbitrarily and unreasonably applied the principles of the FOIA exemption rules. It is my belief that the VA should have provided these documents in response to my FOIA request; eliminating the need for me to include them in this lawsuit.

The FOIA provides for nine exemptions. Exemption number six provides an exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § (a)(4)(E) provides that:

> the court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—a judicial order, or an enforceable written agreement or consent decree; or a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

The following cases pertain to this exemption:

- *Batton v. I.R.S.*, 718 F.3d 522, 525 (5th Cir. 2013): "This language naturally divides the attorney-fee inquiry into two prongs[:] ... fee eligibility and fee entitlement."

- *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 98 (D.C. Cir. 2020), "in order to establish eligibility for attorney's fees, a FOIA plaintiff must show that its lawsuit caused a change in the agency's position regarding the production of requested documents."

- *Urban Air Initiative, Inc. v. Envtl. Prot. Agency*, 442 F. Supp. 3d 301, 312 (D.D.C. 2020), "The D.C. Circuit has held that orders requiring agencies to produce records by a certain date are sufficient to "render the plaintiffs who secure them prevailing parties eligible for attorney's fees." *Citing Judicial Watch v. FBI*, 522 F.3d 364, 369 (D.C. Cir. 2008); *see also Campaign for Responsible Transplantation v. FDA,* 511 F.3d 187, 194, 379 U.S. App. D.C. 158, 165 (D.C. Cir. 2007); *Edmonds v. FBI*, 417 F.3d 1319, 1322-23, 368 U.S. App. D.C. 70, 73, (D.C. Cir. 2005) (finding plaintiff substantially prevailed where the court directed defendant to produce documents by a specified date)." Further, the court in *Urban Air Initiative* found that this "is because once an order is adopted by a court explicitly requiring an agency to release documents, its compliance can no longer be described as voluntary, and the legal relationship between the parties has been changed by virtue of an enforceable order. *See, e.g., Campaign for Responsible Transplantation, supra,* 511 F.3d at 197; *Davy v. CIA,* 456 F.3d 162, 166, 373 U.S. App. D.C. 12, 16 (D.C. Cir. 2006).

- *Reyes v. United States Nat'l Archives & Records Admin.,* 356 F. Supp. 3d 155, 163–64 (D.D.C. 2018): "After determining that Plaintiff is eligible for attorneys' fees, the Court must still determine if Plaintiff is entitled to fees." To determine whether a Plaintiff is entitled to attorneys' fees, the Court

must weigh four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding.

- In *Envtl. Integrity Project v. United States Envtl. Prot. Agency*, 316 F. Supp. 3d 320, 325 (D.D.C. 2018), the court reasoned that a court may "assess reasonable attorney fees and other litigation costs reasonably incurred" in the course of FOIA litigation in which the complainant has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Whether an award of attorneys' fees is proper depends on a two-step inquiry of (1) eligibility and (2) entitlement. There is no presumption in favor of awarding fees to complainants who ultimately receive documents, and the court has "broad discretion" when considering whether to grant an award of attorneys' fees." Further, the court reasoned that "the fee-shifting provision of FOIA is not meant to punish an agency for delays in processing requests, but to reward plaintiffs whose lawsuits alter an agency's slowness and bring about disclosure. *See also Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587, 209 U.S. App. D.C. 329, 332 (D.C. Cir. 1981).

- *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 293 F. Supp. 3d 17, 30 (D.D.C. 2017), the court reasoned that there is no precise rule or formula for determining the reasonable amount of attorneys' fees when a plaintiff has achieved only partial or limited success. The district court may attempt to identify specific hours that should be eliminated from the fee request, or the court may simply reduce the award to account for the limited success. Where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained. "The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time," *quoting Fox v. Vice*, 563 U.S. 826, 838 (2011).

- In *Weikamp v. United States Dep't of Navy*, 175 F. Supp. 3d 830, 837 (N.D. Ohio 2016), the court denied attorney fees for pro se litigants.

- *See, Ecological Rights Found. v. Fed. Emergency Mgmt. Agency,* 365 F. Supp. 3d 993, 1008 (N.D. Cal. 2018), where the court awarded legal fees but also the Court found "the claimed hours are excessive and that a 55% across-the-board reduction [was] appropriate."

I am requesting that this Court consider doing something similar, award

reasonable litigation/case filing fees.

## III. Privacy Act Violation Cause of Actions

### A. Separation Records

As the IRS noted, my resignation paperwork was processed promptly; this ensured that I was paid on time and that my leave balances were updated properly. However, these two actions did not translate into all of my records being updated so that I received my SF50 timely. While it is understandable that the generation of the SF50 may take more time than an electronic paycheck to be generated, I do not believe it is an unreasonable expectation that this document be generated three months after I left the IRS. I resigned from the IRS in October 2017; however, I did not receive my final SF50 until June 2018, via the FOIA process.

I contacted the IRS on at least three occasions concerning these records, see Exhibit B. After failing to receive a response, I resorted to using the FOIA process to obtain my SF50; something that should not occur. If all my employee separation records were accurate, the final SF50 would have been automatically generated and mailed to me.

It is my belief that these issues did have an adverse impact; it robbed me of my opportunity to be considered for status federal government employment opportunities. In the federal government hiring process, some positions are only open to status federal government employees and/or federal employees who can show that they have been

employed at a certain grade level for at least a year and are eligible to apply for specific grade levels. While I cannot prove that I would have been hired by any of these or other agencies, I can prove that I was unable to be considered for these positions because of the failure of the IRS to accurately maintain and produce accurate records. Exhibit C shows the response from agencies, saying that I could not continue in the hiring process because I could not show that I was either a former federal government employee or that I had employed at the GS-14 level for at least one year; information present in the SF50.

I have provided documentation showing that I contacted the IRS on several occasions concerning these records and that I used the FOIA process to finally obtain them. It is my assertion that these facts provide enough of a basis for the potential of a Privacy Act violation; therefore, this cause of action should not be dismissed and be allowed to continue the lawsuit process.

**B. Bureau of Engraving and Printing (BEP) PII Request**

In the government's response, they noted that access to Personally Identifiable Information (PII) is needed when a contractor onboards with the agency. When Ms. Hall asked for my PII, I was not onboarding with BEP, I had already been separated from BEP for approximately one month.

When I started the security process with BEP, I worked with Ms. Hall, see Exhibit D. While Julie Evans was copied on a few of the emails when I started the onboarding process, I never worked with or interacted with her. Moreover, Ms. Evans

was not involved in my security adjudication process.

When I was separating from the agency, I worked with Ms. Hall to ensure that all paperwork was completed and that I had returned everything, such as my PIV card and desk keys, see Exhibit D. If the operating procedure described by Venancio Biela is the explanation as to why my PII was requested, it doesn't explain why this problem was not encountered during the weeks I was preparing to leave, information that could be provided in an affidavit provided by Ms. Hall.

As to ascertaining an adverse impact, that would be hard to do when I do not know what has happened with my PII after I provided it. What I can say is that I have experienced some adverse actions that required knowledge of my PII. In addition to the Soft Credit Pulls described previously, I had one instance of credit card identity theft and my personal email account was compromised by someone well versed in circumventing the use of password key phrases and biological authentication methods, see Exhibit E. I am not alleging that the BEP or Treasury committed these acts. However, I do not believe my assertion that the Privacy Act has been violated is not unreasonable, given the timing of these events; and the submitted affidavit does not alleviate my privacy violation concerns. In the affidavit provided by BEP, it failed to state that:

- my PII was only entered into the Contractor Access Request system,
- my PII has not and was not entered into any other system,

- no one in Treasury or BEP has accessed my PII,
- my PII records have been archived and are not available to anyone in Treasury, and that
- my PII has not or was not shared with any other entity.

If the federal government can provide some type of assurance affirming these statements and have Ms. Hall explain her actions in an affidavit, I will concede that this is a moot issue. However, if the BEP cannot or is unwilling to provide this type of affirmation, I would argue that the information I provided is a solid basis for the potential of a Privacy Act violation and that this cause of action should not be dismissed and be allowed to continue the lawsuit process.

Moreover, in the various federal government directives and policies I have read, a nonchalant attitude and approach to PII access is in direct conflict to public information provided by the Office of Management and Budget (OMB), the National Institute of Standards and Technology (NIST), the Taxpayer Browsing Protection Act of 1997 and IRS Policy IRM 10.5.1 - Privacy Policy and 10.5.5 IRS Unauthorized Access, Attempted Access, or Inspection of Taxpayer Records (UNAX) Program Policy, Guidance and Requirements. OMB Memorandum M-07-16 specifically states that safeguarding PII in possession of the federal government is essential. NIST's special publication 800-53 provides guidelines for government agencies to protect and safeguard PII. Lastly, my interpretation of the Taxpayer Browsing Protection Act of

1997, IRM 10.5.1 and IRM 10.5.5, the act of reviewing and/or accessing this type of data without a valid business reason is itself considered a privacy violation. However, if Treasury believes that limiting access to PII is not a priority privacy issue, this would explain the over 700 IRS-initiated access instances to my tax record (Audit Trail) in an approximately three-year time period, see Exhibit F.

**C. USAJobs Account**

One aspect of the Privacy Act is that "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, ...".

Despite the IRS' assertion that OPM "owns" the USAJobs web application, Treasury does manage and operate a portion of this application. When I began experiencing issues on the "Treasury" portion of the system, I contacted Treasury personal to explain the issues I experienced. Treasury responded stating that they would investigate the matter, see Exhibit G. He also said I should follow-up with IRS for an answer to one of the issues I experienced.

It is my belief that these issues did have an adverse impact; it robbed me of employment opportunities.

As to intent, it is my belief that intent and the linkage between these events and

adverse actions (or the lack thereof) can be proven/disproven during the Discovery Phase of this process. The Discovery process would uncover the results of the Treasury investigation, give the IRS HR representative who sent the altered email response, Ms. Marie Lipira, an opportunity to answer questions explaining her actions as to why the response template was altered, see Exhibit H, and give an IRS' HCO employee, who actually uses the USAJobs application, an opportunity to explain the capabilities available to IRS HCO employees and contractors for the USAJobs application for each application role.

I have documented the issues I experienced, provided documentation that Treasury does manage a portion the web application and was investigating the issues, and referred me to the IRS to address one of the issues I encountered. It is my assertion that these facts provide enough of a basis for the potential of a Privacy Act violation and that this cause of action should not be dismissed and be allowed to be allowed to continue the lawsuit process.

**D. Fresh Start "Application"**

One of the Privacy Act requirements is that an agency maintain accurate records pertaining an individual. When the government is notified that their records pertaining to an individual are inaccurate, the government should make the correction; failure to correct the inaccuracy can be considered a Privacy Act violation. As previously shown, the IRS received my application materials to start the Fresh Start program on September

29, 2019. Despite receiving my application materials, the IRS sent me an "Intent to Levy" letter, dated November 5, 2019, see Exhibit I.

According to the Audit Trail, see Exhibit F, there were approximately 25 IRS-initiated actions against my tax account, which occurred after my application materials had been received. None of these IRS initiated actions resulted in the IRS properly updating its records to show that I had submitted these documents. The failure of the IRS to properly maintain my tax records led to the Service sending me an "Intent to Levy" letter. Moreover, in a letter dated January 16, 2020, see Exhibit J, the IRS acknowledged the receipt of these documents.

As previously stated, after receiving this letter, I did follow-up with the IRS, reminding them that I had submitted these documents but, the IRS failed to act, even though there were approximately 54 IRS-initiated actions against my tax account during the November 2019 to January 2020 timeframe.

As to the assertion that the IRS did not officially deny my application, I would argue that any reasonable person in my situation would have believed that their application had been denied. Not only did the IRS send me an "Intent to Levy", the IRS' Tax Advocacy Services office responded said that they could not assist me in the matter, see Exhibit K.

It is my belief that the failure of IRS to maintain accurate records did have an adverse impact; it robbed me of my opportunity to apply for and be accepted into the

IRS' Fresh Start program. Had the agency kept proper records, or at the very least corrected the records when I notified them of the error, I would not have endured an adverse financial impact.

As to intent, it is my belief that intent and the linkage between these events and adverse actions (or the lack thereof) can be proven/disproven during the Discovery Phase of this process. After receiving my application materials, the IRS decided to send me an "Intent to Levy" letter; they also decided not to respond to my request to correct my records, despite the almost 80 IRS-initiated actions to my tax account. It is my assertion that these events provide enough of a basis for the potential of a Privacy Act violation and that this cause of action should not be dismissed and be allowed to be allowed to continue the lawsuit process.

**E. Removal of TIGTA Complaint**

As previously noted, one of the Privacy Act requirements is that agency maintain accurate records pertaining an individual. In the government's response, it is my perception that they conceded that they failed to maintain accurate records as it pertains to the TIGTA complaint I submitted. In the submitted supporting affidavits, it is mentioned that TIGTA employees followed standard procedures and operating protocols. However, in the two versions of TIGTA Operations Manual to which I have access, one dated October 1, 2017, see Exhibit L, and another dated January 11, 2000, which I obtained from the TIGTA website on January 19, 2022, see Exhibit M, it doesn't

appear that agency operations were followed.

In section 280.3 Complaint Procedures., page 2 and Section 240.3 Complaints Received by CMT., page 3, of the Operations Manuals, both mention the first step in the Complaint processing process as being entering the complaint into TIGTA's tracking system, not emailing the complaint to an individual. Therefore, I would submit that the assertion that agency operating procedures were followed is incorrect.

Moreover, the submitted affidavits fail to address the fact that the Treasury Inspector General (IG), also submitted a TIGTA complaint on my behalf, see Exhibit N, which doesn't appear to have been entered into TIGTA's system either.

It is my belief that the failure of TIGTA to maintain accurate records did had an adverse impact; it robbed me of my opportunity to have my complaint properly and timely adjudicated. And while my complaint was eventually addressed, it was ONLY due to my tenacity and perseverance. Had I not been persistent in pursuing my complaint, the actions by IRS management would not have been investigated - and IRS personnel would not be on the record as having to address my allegations.

As to intent, it is my belief that intent and the linkage between these events and adverse actions (or the lack thereof) can be proven/disproven during the Discovery Phase of this process. Two complaints, one submitted by me, the other submitted by another government office, were not properly processed. This failure to follow established operating procedures led to two instances of agency records not being

properly maintained. It is my assertion that these two events provide enough of a basis for the potential of a Privacy Act violation that this cause of action should not be dismissed and be allowed to continue the lawsuit process. In this specific instance, obtaining TIGTA internal procedure documents, system audit trails and TIGTA employees testimony via a deposition or Interrogatory responses would clarify several issues and questions, such as the lack of process redundancy, why/how one person is a single point of failure, how TIGTA ensures that each submitted complaint is properly handled, if there have been any other instances of improperly handled complaints - or did this only occur with the complaints submitted by me or on my behalf, and what the agency's response is to these types of incidents.

**CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully requests that the Court deny the Agency's motion to dismiss the complaint and for a summary judgment.

**LIST OF EXHIBITS**

| Letter | Description |
|---|---|
| A | Sample VA FOIA Response |
| B | SF50 Requests to the IRS |
| C | USAJob Responses |
| D | BEP Emails |
| E | Non-valid Hotmail Access |
| F | Audit Trail |
| G | USAJobs Investigation Email |
| H | Marie Lipira Email |
| I | "Intent to Levy" letter |

| | |
|---|---|
| J | IRS January 16, 2020 Letter |
| K | Taxpayer Advocate Service Letter |
| L | TIGTA Operations Manual dated October 1, 2017 |
| M | TIGTA Operations Manual dated January 11, 2000 |
| N | Treasury Inspector General (IG) Email |

Respectfully Submitted,

Date: 1/24/2022

Kiesha D. Lewis

## Certificate of Service

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

| | |
|---|---|
| Electronic Mail | Emily K. Miller<br>United States Department of Justice, Tax Division<br>P.O. Box 227<br>Washington, DC 20044<br>emily.k.miller@usdoj.gov |
| Electronic Mail | Rebecca A. Koch<br>Assistant United States Attorney<br>6406 Ivy Lane, Suite 800<br>Greenbelt, MD 20770<br>301-344-4233<br>rebecca.koch@usdoj.gov |
| USPS First Class Mail | Charles P. Rettig, Commissioner<br>IRS<br>1111 Constitution Avenue NW<br>Washington, DC 20224 |
| USPS First Class Mail | Leonard R. Olijar, Director<br>Bureau of Engraving and Printing<br>301 14th St SW<br>Washington, DC 20250 |
| USPS First Class Mail | J. Russell George, IG<br>1401 H Street, NW<br>Suite 469<br>Washington, DC 20005 |

January 24, 2022
(Date)

Kiesha D. Lewis