OFFICE OF TREASURY INSPECTOR GENERAL
FOR TAX ADMINISTRATION

DATE: October 1, 2017

**CHAPTER 400 – INVESTIGATIONS**

**(400)-280**    **IRS Employee Investigations**

280.1  Overview.
The Office of Investigations (OI) investigates complaints and allegations against Internal Revenue Service (IRS) employees. The results of investigations are submitted to IRS management without recommendation as to any action to be taken. Investigations of TIGTA employees are addressed separately in Section 330.

This section includes the following information related to employee investigations:

- Investigative Jurisdiction
- Complaint Procedures
- Initiating Employee Investigations
- Post-Appointment Arrest Investigations
- Allegations Requiring Internal Affairs Division (IAD) Coordination
- Investigative Procedures
- Reports of Investigations
- Conflict of Interest Referrals
- Recovering Unjust Enrichments
- Required Notifications Under 26 U.S.C. § 7431
- Sexual Harassment Allegations
- Tax and Financial Crime-Related Employee Misconduct

280.1.1  Acronyms Table.

280.2  Investigative Jurisdiction.
OI is responsible for detecting and investigating violations involving IRS employees and former employees. The employment status of the subject at the time the investigation is initiated is not relevant, only what his/her status was at any time during the time the violation was alleged to have been committed. An allegation must be related to the administration of the programs and operations of the IRS to be considered for investigation. See Section 10.3 for OI divisional responsibilities and duties.

280.2.1  IRS Employees Under TIGTA's Jurisdiction. OI is responsible for conducting investigations of alleged misconduct (as defined in Section 280.4) by all IRS employees, including, but not limited to:

- GM/GS employees;
- IR-1 employees;
- Office of Chief Counsel employees;
- IRS Oversight Board; and

- International employees.

See Section 210.5.1 of this chapter for a more detailed discussion of covered IRS employees. Also, please note that investigations of some of these IRS employees must be referred to OI's IAD). See Section 280.6.

280.3 Complaint Procedures.
Complaints should be entered into the Criminal Results Management System (CRIMES) within 15 days of receipt. The appropriate OI division will interview the complainant, evaluate all the information, and decide whether to initiate an investigation. See Section 240 for further information.

280.4 Initiating Employee Investigations.
OI will initiate an employee investigation if the allegation meets all of the following four elements:

- The complaint is against an identified IRS employee, or if the identity is unknown, against a person believed to be an IRS employee;
- The alleged violation occurred when the subject was employed by the IRS, regardless of the subject's employment status at the time the case is initiated;
- The allegation involves criminal or serious administrative misconduct; and
- There is a nexus between the alleged violation and the administration of the programs and operations of the IRS.

280.5 Post-Appointment Arrest Investigations.
Upon receipt of information concerning a post-appointment arrest of an identified employee, contractor, or someone believed to be an IRS employee or contractor, enter the initial intake in CRIMES and then verify the arrest.

280.5.1 Initiating a Post-Appointment Arrest Investigation. After verifying the arrest, the special agent (SA) will evaluate the complaint and initiate an investigation, when warranted. All post-appointment arrests concerning matters within TIGTA's jurisdiction will be considered for investigation, including arrests involving financial crimes, theft, or controlled substances. Arrests involving domestic violence are investigated when the subject is an IRS Criminal Investigation (IRS-CI) SA.

280.5.2 Notifying IRS of Post-Appointment Arrests. In all post-appointment arrests, the Special Agent in Charge (SAC) will notify the IRS as follows:

- If the post-appointment arrest information was received from the IRS's Employee Conduct and Compliance Office (ECCO), the SAC or the Assistant Special Agent in Charge (ASAC) will notify the IRS, via the two-way memorandum, whether OI will investigate the arrest. If no investigation is initiated by OI, the SAC will return the post-appointment arrest documents with the two-way memorandum.

OFFICE OF TREASURY INSPECTOR GENERAL
FOR TAX ADMINISTRATION

DATE: October 1, 2017

- If the post-appointment arrest information was received from a source other than ECCO, and no investigation is initiated, the SAC will notify the IRS via Form OI 2070, Complaint Referral Memorandum.

280.6   Allegations Requiring Internal Affairs Division Coordination.  Allegations made against IRS-CI employees, employees of the IRS Office of Chief Counsel, TIGTA employees, international IRS employees as defined in Section 340.2.2, or senior IRS officials as defined in Section 340.2.1 should be referred to the SAC-IAD for investigative consideration and coordination.

280.7   Investigative Procedures.
SAs will conduct a thorough analysis of the complaint or allegation and prepare an investigative work plan outlining all evident steps.  SAs will place this information on the approved Form OI 6501, Chronological Case Worksheet.  SAs will conduct all leads to prove or disprove the elements of the violation, or to show that the issue cannot be resolved.  Refer to Section 250.4 for further instructions on investigative work plans.

280.7.1   Initial Interviews.   Interview the complainant within 15 days.  If extenuating circumstances prevent this, the SA should contact the complainant by telephone to arrange for a mutually convenient interview time.

The decision to interview or not interview an IRS employee who is the subject of an employee investigation should be made on a case-by-case basis.  See Section 210.5 for a list of general guidelines.  Where there is no reasonable indication that a criminal statute has been violated, the SA must consider interviewing the subject at the outset of the investigation.

280.7.2   Pledges of Confidentiality.   Generally, OI does not extend an assurance of confidentially to any individual who may be involved in the violation being investigated.  See Section 210.2.5 concerning pledges of confidentiality for witnesses and requirements for reporting such matters on a Form OI 2028-M, Memorandum of Interview or Activity.  See also Section 150 for guidelines on the use of confidential sources (CS).

280.7.3   Granting Confidentiality.   Pursuant to Section 210.4, all Department of the Treasury employees who are complainants or who have provided information concerning violations of law, rules, regulations and/or fraud, waste, and abuse, are presumed to have confidentiality under § 7(b) of the Inspector General (IG) Act, unless they specifically consent to allow TIGTA to disclose their identities.  As a result, Treasury employees who furnish information to TIGTA and request confidentiality pursuant to the IG Act are processed as follows:

- Fully document the identity of the Treasury employee in CRIMES;

- Identify the employee in the Report of Investigation (ROI) by the temporary identifier T-1, T-2, etc., as the employee's identity should not be made known outside of TIGTA; and
- Check "No" to the "Confidentiality Waived" question in CRIMES.

280.8   Reports of Investigation.
SAs will close employee investigations and refer the ROIs for criminal prosecution or administrative adjudication promptly.

SAs will prepare ROIs as outlined in Section 250.7.

280.9   Conflict of Interest Referrals.
Pursuant to 5 U.S.C. app. 4 § 402(e)(2) and 5 CFR § 2638.603, TIGTA is required to report to the Director, Office of Government Ethics (OGE), possible violations of Federal conflict of interest statutes, 18 U.S.C. §§ 203, 205, 207, 208, and 209; a civil or criminal matter related to the filing or non-filing of a financial disclosure report under applicable legal authorities; or a civil matter involving outside earned income under 5 U.S.C app. 501 or outside activities under 5 U.S.C. app. 502. OGE requires a report whenever a potential violation of any of the above statutes is referred to the Department of Justice (DOJ) for criminal prosecution or civil enforcement. OI utilizes OGE Form 202, Notice of Conflict of Interest Referral, Part 1, Part 2 and Part 3 to fulfill this reporting requirement.

If the investigation was not referred for a violation of one of these statutes, do not submit an OGE Form 202.

280.9.1   OGE Form 202, Part 1.   The OGE Form 202, Part 1 must be submitted after the initial referral, whether oral or written, to the U.S. Attorney's Office (USAO) or DOJ. Part 1 is intended to collect only basic information related to the open investigation to include:

- The name of the referring agency (TIGTA);
- The agency point of contact (Special Agent making referral);
- The identity of the DOJ component to which the referral was made (*i.e.,* the Public Integrity Section, the U.S. Attorney's office for a particular district, or another DOJ component);
- The date of the referral; and
- The TIGTA investigation number.

Upon receipt of OGE Form 202, Part 1, OGE will assign a tracking number and then confirm receipt of the referral and inform TIGTA of the assigned OGE tracking number. If the case agent, as the agency point of contact, receives notification of the assigned OGE tracking number, the SA should forward the OGE tracking number to Operation's

Inbox *TIGTA Inv Operations, within three days of receipt along with the TIGTA investigation Number.

280.9.2   OGE Form 202, Part 2.   OGE Form 202, Part 2 must be submitted by the assigned SA after **both** of the following events have occurred:

- DOJ has a) declined prosecution; b) initiated prosecution or taken other legal action that is a matter of public record; or c) settled the matter through formal agreement; and
- Investigation of the matter has concluded.

OGE Form 202, Part 2 is intended to collect the following information:

- The identity of the subject employee;
- The name of the employing agency and component;
- The relevant legal authorities implicated by the alleged conduct;
- Actions taken, or determinations made, by DOJ; and
- Other information deemed pertinent by the referring office.

280.9.3   OGE Form 202, Part 3.   OGE Form 202, Part 3 is intended to report, when applicable, the employing agency's administrative resolution to any related Ethics or Code of Conduct violations.  Part 3 of Form 202, will be submitted by the Designated Agency Ethics Official (DAEO) of the employing agency.  In most TIGTA investigations, the employing agency will be the IRS; therefore, the individual responsible for completing and submitting Part 3 of Form 202 will be the IRS' DAEO, or designated representative.  If Part 3 of Form 202 becomes applicable, OGE will contact the employing agency's DAEO for submission of the form.  **The assigned SA is not responsible for the completion or submission of Part 3 to OGE**.

**Note**:  For TIGTA employee investigations, TIGTA's Office of Chief Counsel serves as the DAEO.

280.9.4   Reporting Procedures.   Following all actions that require reporting, divisions must forward completed OGE Forms 202, Part 1 and Part 2 through the ASAC and SAC to the *TIGTA Inv Operations e-mail box by the 10th of each month.  If the division has no conflict of interest referrals or subsequent actions to report for the month, a negative report is required and must also be sent to the *TIGTA Inv Operations e-mail box by the 10th of each month.

**Note**:  Based on the particular facts of each case, it is possible the submission of OGE Form Part 1 and Part 2 will be submitted simultaneously.  For example, if an investigation is referred orally to DOJ and declined; resulting in the investigation being immediately referred to the IRS for administrative action, then Part 1 and Part 2 will be submitted simultaneously.

OFFICE OF TREASURY INSPECTOR GENERAL
FOR TAX ADMINISTRATION

DATE: October 1, 2017

OGE will contact TIGTA on a quarterly basis requesting status updates until OGE Form 202, Part 2 is received. The SAC is responsible for reporting a DOJ referral update, by the 10th of each month, for each pending investigation, when an OGE Form 202, Part 2 has not yet been submitted, describing the current status of the investigation, such as:

- Awaiting response from DOJ;
- DOJ declined prosecution, investigation pending;
- DOJ declined prosecution, investigation concluded (adverse ethics-related findings against the subject);
- DOJ declined prosecution, investigation concluded (no adverse ethics-related findings against the subject);
- DOJ initiated a criminal prosecution;
- DOJ initiated an action for civil penalties; or
- DOJ resolved the matter by agreement with the subject.

The SAC will provide one of the above status updates for each previously referred investigation as part of their normal monthly OGE reporting requirements.

Once OGE Form 202, Part 2 has been submitted, no further monthly monitoring or reporting is required.

**Note:** Before reporting cases involving undercover (UC) operations, electronic equipment usage and/or confidential grand jury information, coordinate with the Operations Division for guidance on reporting requirements.

The SAC-Operations will prepare a monthly memorandum to the Director, OGE, advising of any referrals and subsequent DOJ actions.

280.10   Recovering Unjust Enrichments.
As an alternative to, or in addition to, criminal prosecutions, civil sanctions should be pursued in any case involving employees or non-employees who were unjustly enriched. SAs should discuss civil and criminal aspects of their investigations with an Assistant United States Attorney (AUSA) to ensure that all possible sanctions available to the Government are pursued.

SAs should discuss debt collection activity with IRS officials following an employee's arrest, suspension, or removal when the employee may be indebted to the Government due to unjust enrichments. Coordinate with the AUSA in prosecution cases. See 26 U.S.C. § 7804 for additional information.

280.10.1   Notification in Theft and Embezzlement Cases.
In all investigations, including lockbox investigations, where TIGTA receives information that a theft or embezzlement of funds deposited with the IRS has occurred, notify the

IRS by memorandum from the SAC within 10 days of interviewing the complainant and making a determination that there is a reasonable basis to conclude a theft or embezzlement has occurred.

280.10.2  Notification When Financial Harm Has Occurred.  Generally, if financial harm to a taxpayer has occurred, notify the IRS immediately so that appropriate action can be taken to make the taxpayer whole.  In cases where the affected taxpayers have been identified, the SAC will provide the IRS with a list of the taxpayers so that the IRS can protect the taxpayers from any undue collection activity.  The SAC will send the memorandum to the Field Director of the Submission Processing Center that services each taxpayer's account.  The memorandum must contain the following available information:

- Assigned case number;
- Taxpayer's name, identification number, type of tax, tax period, and amount and date of payment;
- Request that the taxpayer's account be credited;
- Where the theft/loss occurred;
- Status of the remittance; and
- The name and telephone number of the SA.

If, during the investigation, the IRS needs information that was not available when the initial notification was given, direct the IRS to contact the SA identified in the initial memorandum.  If the information is provided verbally by the SA, the IRS may request that the verbal information be confirmed in writing by a memorandum.  When verbal information is requested in writing, the SAC will provide the Field Director of the respective Submission Processing Center with a memorandum detailing the updated information.

See Exhibit(400)-280.1 for sample format of memorandum to a Field Director, Submission Processing Center.

See Exhibit(400)-280.5 for Submission Processing Center addresses.

280.10.3  Final Notifications in Theft and Embezzlement Cases.  At the completion of an investigation involving a theft or embezzlement, notify the IRS of the final results of the investigation, including the results of any prosecution and sentencing so that the IRS can determine when to initiate collection action and the amount to be assessed.

The SAC will send a memorandum of the results of prosecution and sentencing to the Field Director of the Submission Processing Center that services each taxpayer's account.  The memorandum will contain the following:

- Subject's name;

- Disposition of the case (*e.g.*, guilty, not guilty, pretrial diversion);
- Sentence (*e.g.*, length of incarceration or probation, or amount of court-ordered restitution, fines, and court costs); and
- If applicable, notification that TIGTA is transferring tax remittance money to the IRS that was seized during the investigation and forfeited by the court to TIGTA.

When tax remittance money is seized during a theft or embezzlement investigation, the case SA should request the court to order that the money be forfeited to TIGTA so TIGTA can transfer it to the IRS for deposit into the Treasury General Fund to be credited to the affected taxpayers' tax accounts. If the court orders the forfeiture of the seized tax remittance money to TIGTA, the SA must convert the cash money to a cashier's check or money order made payable to the U.S. Department of the Treasury. The SAC will forward the check or money order with the results memorandum and attach an IRS Form 3210, Document Transmittal that contains the following information:

- **To Block:** IRS Submission Processing Center Address where the results memorandum is being sent.
- **Document Identification Block:** Seized tax remittance money, case number, cashier's check or money order number, made payable to the U.S. Department of the Treasury, and the amount.
- **Remarks Block:** Overnight tracking number.
- **From Block:** Case SA's mailing address.
- **Releasing Official Block:** SAC signs.

The Form 3210, results memorandum, and check or money order must be sealed in an inner "Confidential" envelope and mailed to the IRS using traceable overnight mail.

Once the signed Form 3210 is received from the IRS, the SA must attach the signed Form 3210 to a Statement of Special Moneys and Property Transaction (Form OI 141), as supporting documentation for disposal of the money. See Form OI 141 instructions for preparation and disposition of the form, and Chapter 600, Section 50.11.4 and for receipt and disposal of special moneys.

See Exhibit(400)-280.4 for the format of the memorandum of prosecution and sentencing to a Field Director, Submission Processing Center.

See Exhibit(400)-280.5 for Submission Processing Center addresses.

The SAC will prepare a memorandum transmitting the final ROI to the Field Director of the Submission Processing Center that services each taxpayer's account and attach to it a copy of the ROI. The transmittal memorandum, ROI, and Form OI 2076, Referral Memorandum is then sent to IRS Employee Conduct and Compliance Office (ECCO) as instructed in Section 250.12.1. If the IRS Remittance Security Coordinator or the Field

Director, Submission Processing Center requests more information, direct them to contact the originating SAC directly.

See Exhibit(400)-280.3 for the format of the memorandum transmitting the final ROI to a Field Director, Submission Processing Center.

280.10.4   Court Ordered Restitution.   The IRS has designated a centralized office to collect and process all criminal restitution payments in which the IRS is a victim of crime, and has coordinated this procedure with the U.S. Courts, the U.S. Probation offices, and the U.S. Attorney's offices.  In cases where the court orders restitution as a part of sentencing, advise the AUSA's office and the U.S. Probation office that restitution payments should include the affected taxpayer's full name and the court docket number, and should be sent to the following address:

> Internal Revenue Service
> Attn: MS 6261 Restitution
> 333 W. Pershing Rd.
> Kansas City, MO 64108

280.10.5   Stopping Payment of Money Due an Employee.   The IRS has authority to withhold payments of salary and benefits of an employee, including the final salary payment of a separating employee who has been found to have embezzled or stolen Government funds.  The requests are processed by the National Finance Center (NFC) through the IRS's Austin Payroll Center.  NFC establishes a debt related to the embezzled or stolen funds and sends a notification to the employee.  If the employee subsequently separates, their final paycheck or lump sum payout is offset and applied to the debt.  To request the IRS consider such an offset of funds, the SA should:

- Obtain concurrence from the AUSA prosecuting the case;
- Keep the AUSA apprised of the status of the employee to ensure that criminal prosecution is not influenced by any administrative action; and

Mail a formal request memorandum from the SAC to:

> Chief of the Austin Payroll Center
> 3651 S. IH 35, Stop 1557 AUSC
> Austin, TX 78741

The subject line should read, Request to establish a debt as a result of a TIGTA investigation.

The memorandum must include the following information:
- Agency;
- Name of debtor (employee);

OFFICE OF TREASURY INSPECTOR GENERAL
FOR TAX ADMINISTRATION

**DATE: October 1, 2017**

- Payroll Office Identifier (POI)/employee organization code;
- Social Security Number of debtor;
- Date of Birth;
- Address of debtor;
- Current employment status;
- Amount of debt;
- Fiscal year of the debt; and
- Reason for the debt.

See Exhibit(400)-280.2 for a sample format of the memorandum to the Chief, Austin Payroll Processing Center.

In cases where TIGTA funds are embezzled or stolen during a remittance test, the above procedures of stopping payment also apply. For further information on remittance tests see Section 390.

280.11   Required Notifications Under 26 U.S.C. § 7431.
Upon the filing of a criminal information or indictment for unauthorized access or disclosure under 26 U.S.C. § 7213, 26 U.S.C. § 7213A, or 18 U.S.C. § 1030(a)(2)(B), the SAC-Operations, upon notification from the field, will provide the information to the IRS Privacy, Governmental Liaison and Disclosure, which will notify the affected taxpayer(s) pursuant to the notification provision of 26 U.S.C. § 7431(e). For further information on 26 U.S.C. § 7431 notifications to the IRS, see Section 290.9.

280.12   Sexual Harassment Allegations.
TIGTA is responsible for investigating the following types of sexual harassment allegations at the IRS:

- Quid pro quo situations, in which submission to or rejection of sexually harassing behavior is used as a basis for employment decisions affecting the employee. Examples of quid pro quo behavior include promises of a promotion for engaging in sexual activity, negative appraisals for refusing to engage in sexual activities, or employment action taken against an employee for refusing to engage in sexual activities;
- Unwanted physical contact of a sexual nature; and
- Conduct of a sexual nature for the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

280.12.1   IRS Policy and Authority.   IRS policy is to provide a work environment free from sexual harassment. Sexual harassment will not be tolerated, whether committed by executives, supervisors, employees, or non-employees such as contractors, taxpayers, or visitors.

Sexual harassment is:
- Illegal under Title VII of the Civil Rights Act of 1964, as amended;
- Defined in Equal Employment Opportunity Commission (EEOC) regulations, 29 C.F.R. § 1604.11; and
- Specifically prohibited by Treasury Employee Rules of Conduct, 31 C.F.R. § 0.214.

280.12.2   Reporting Sexual Harassment Allegations.   An IRS employee can report sexual harassment through any of the following methods:
- The statutory EEO complaint process, which includes EEO counseling and the option of simultaneously bringing the allegation to the attention of the Commissioner and TIGTA;
- The Treasury Hotline 800-359-3898;
- Contact with IRS management such as a supervisor or head of office;
- The negotiated grievance process for bargaining unit employees; or
- The toll-free TIGTA Hotline 800-366-4484 or direct contact with TIGTA if the sexual harassment involves quid pro quo circumstances or unwanted physical contact of a sexual nature.

A victim is not required to report sexual harassment allegations to TIGTA.  However, EEO officials and IRS managers to whom allegations are reported are required to refer to TIGTA those allegations meeting the criteria set forth in Section 280.12.

280.12.3   Relationship Between EEO and TIGTA Investigations.   A victim may report an allegation of sexual harassment to both TIGTA and EEO.  Employees may continue to seek a remedy under the statutory EEO complaint process even if a TIGTA investigation is initiated.

Separate TIGTA and EEO investigations may be conducted simultaneously regarding the same incident.  The referral to TIGTA does not suspend the EEO process and an EEO investigation does not suspend the TIGTA investigation.

SAs will explain to complainants that a TIGTA investigation is not the same as an EEO investigation and that:

- Victims are not required to report the allegation to EEO;
- If EEO remedies are desired, victims making a sexual harassment complaint to TIGTA must contact an EEO counselor within 45 days of the alleged harassment to preserve their EEO rights; and
- TIGTA investigations concentrate on the issue of employee misconduct, while EEO investigations concentrate on resolving the alleged workplace discrimination.

OFFICE OF TREASURY INSPECTOR GENERAL
FOR TAX ADMINISTRATION

**DATE: October 1, 2017**

When a victim initially reports an allegation to EEO that meets the criteria for referral to TIGTA, EEO informs the victim that:

- A referral to TIGTA will be made;
- His/her identity will not be revealed without his/her written authorization; and
- His/her request to be anonymous may limit IRS management's ability to conduct an inquiry or resolve the allegations.

If the victim does not consent to reveal his/her name, EEO refers the allegation to TIGTA, but maintains the anonymity of the victim.

**Note:** Once an employee files a formal complaint in the EEO process, he/she has no right to anonymity.

Do not provide EEO investigators with a copy of a TIGTA ROI, allow them to review the ROI, or disclose the existence of an investigation. Refer all EEO investigator requests for TIGTA documents to the TIGTA Disclosure Officer. See Chapter 700, Chief Counsel, Section 20.3 of the TIGTA Operations Manual for an overview of the responsibilities of the TIGTA Disclosure Branch.

280.12.4   Case Initiation Procedures. SAs will document the receipt of any complaints regarding sexual harassment, regardless of the source. Forward the allegation to the ASAC for evaluation. If communicated verbally, document the complaint in writing on Form OI 2028-M, Memorandum of Interview or Activity to the ASAC.

The ASAC evaluates allegations of sexual harassment to determine if the circumstances warrant a TIGTA investigation. While not every sexual harassment allegation warrants a TIGTA investigation, an investigative determination is made in every complaint meeting the criteria in Section 280.12. TIGTA officials may consult with EEO officials to determine whether the allegations meet either of the two criteria. After this threshold determination, the ASAC decides whether the allegation should be investigated by OI. The ASAC forwards the information to the SAC-Field Division or, in the case of a TIGTA employee, to the SAC-IAD, for concurrence prior to initiating an investigation.

**Note:** The SAC must concur before an investigation is initiated. The ASAC will document this concurrence and its date in the "Remarks" section in CRIMES.

Use Violation Code "590 – Sexual Harassment" in CRIMES to indicate quid pro quo or touching allegations.

Use Violation Code "952 – EEO Issue/Sexual Harassment" in CRIMES for sexual harassment allegations that may be administrative in nature (*e.g.*, verbal comments).

280.12.5  <u>Notifying IRS Management</u>.  Prompt notification to IRS management allows for immediate and appropriate corrective action in cases of sexual harassment.  Within five workdays of receiving the complaint, the SAC or his/her designee will notify IRS management concerning OI's decision to:

- Initiate an investigation to resolve the sexual harassment complaint; or
- Not investigate the sexual harassment complaint.

280.12.6  <u>Sexual Harassment Allegations Requiring IAD Coordination</u>.  Allegations made against IRS-CI employees, employees of the IRS Office of Chief Counsel, TIGTA employees, international IRS employees as defined in Section 340.2.2, or senior IRS officials as defined in Section 340.2.1 must be referred to the SAC-IAD.

280.12.7  <u>Investigations of Sexual Harassment</u>.   Absent unusual circumstances:

- SAs will complete sexual harassment investigations within 45 days after receipt of a complaint; and
- SAs will give sexual harassment investigations a high priority.

SAs must:

- Establish an investigative strategy upon receipt of the case; and
- Consider the benefit of having an SA of the opposite sex assist in conducting the investigation.

A victim is not required to provide testimony in instances where third parties have provided the sexual harassment complaint or allegation.  A victim's right to confidentiality must be maintained at all stages of the investigative process and will only be disclosed on a "need to know" basis.  While there are no Federal criminal statutes that directly address quid pro quo sexual harassment, consider the elements of the case and other Federal statutes that may fit the circumstances, such as blackmail, extortion, bribery or gratuities.

The following reference material may be helpful when investigating allegations of sexual harassment:

- IRS Document 12011, Plain Talk About Ethics and Conduct;
- The Equal Employment Opportunity Commission;
- U.S. EEOC Regulations, 29 C.F.R., Part 1614;
- U.S. EEOC Management Directive 110, Federal Sector Complaint Processing Manual; and
- 18 U.S.C. § 2241, 18 U.S.C § 2242 and 18 U.S.C. § 2245.

280.12.8   Referral for Administrative Adjudication.   When referring a TIGTA ROI involving sexual harassment to IRS management, the SA will make the following annotation in the "Remarks" section of Form OI 2076: "**This Report of Investigation involves a matter in which there may be related EEO activity**."

280.13   Tax and Financial Crime-Related Employee Misconduct.
Allegations of misconduct by IRS or TIGTA employees, including tax and financial crimes involving employees, fall within the investigative responsibility of TIGTA.  TIGTA investigations of employees for Title 26 **tax-related** violations require coordination with IRS-CI and the Department of Justice Tax Division (DOJ-Tax).  Examples would include, but are not limited to, IRS employees involved in refund schemes, and IRS employees filing false tax returns.  DOJ-Tax has authorized direct referral to the local U.S. Attorney's Office on a limited number of Title 26 violations, such as unauthorized access (UNAX) and unauthorized disclosure.  See Section 350.3 for a list of direct referral violations.

280.13.1   Coordination with IRS-CI.   TIGTA SAs should request assistance from IRS-CI for tax and financial crime-related employee misconduct.  Although IRS-CI has been delegated responsibility for investigating substantive tax and related offenses, the overriding goal of the IRS to maintain the integrity of its workforce makes TIGTA involvement in these investigations necessary.  Disputes involving joint investigations of IRS personnel ultimately will be resolved by TIGTA.  Additional information on investigative responsibilities is outlined in the Memorandum of Understanding (MOU) between the IRS and TIGTA.   See the DOJ-Tax Referral Matrix, Exhibit (400)-350.1, for situations requiring referral to DOJ-Tax.

The general filing of fraudulent tax returns using stolen identities is within the jurisdiction of IRS-CI.  However, IRS employee involvement in an identity theft scheme - either through UNAX, disclosure, or as a participant in the criminal activity, falls within TIGTA's jurisdiction.  Allegations of employee involvement in a stolen identity refund scheme should be coordinated with IRS-CI.  DOJ-Tax Directive 144 has delegated certain authority regarding Stolen Identity Refund Fraud (SIRF) investigations directly to participating U.S. Attorney's Offices without prior approval by DOJ-Tax.  The purpose of the delegation is to provide Federal law enforcement officials with the ability to timely address SIRF crimes.  The directive allows for expedited local processes, (*e.g.*, empaneling a tax grand jury, arresting and Federally charging suspects by criminal complaint), but still requires some coordination with DOJ-Tax.   See the directive for additional information and specific parameters of the delegation.

280.13.2   Substantive Tax or Financial Offenses.   In cases where IRS or TIGTA employees are allegedly committing substantive tax or financial offenses, such as filing false returns or other tax-related documents, willfully failing to file returns or pay taxes, willfully attempting to evade the assessment or payment of taxes, filing false claims for

OFFICE OF TREASURY INSPECTOR GENERAL
FOR TAX ADMINISTRATION

DATE: October 1, 2017

refunds – including identity theft schemes, conspiring to defraud the U.S., or to commit an offense against the U.S. ("Klein conspiracy"):

- TIGTA contacts IRS-CI to obtain assistance in investigating the substantive tax and financial aspects of the allegations. TIGTA's request for assistance in such investigations is normally made by the ASAC, with the concurrence of the SAC, to the appropriate IRS-CI management official;
- TIGTA requests an SA from IRS-CI be assigned to assist in evaluating and, if appropriate, conducting the investigation for substantive tax or financial offenses; and
- The assigned IRS-CI SA will investigate allegations pursuant to CI's delegated responsibilities to investigate substantive tax and related offenses.

If any substantive tax or financial crime investigation is independently initiated by IRS-CI and is found to involve an IRS/TIGTA employee:

- IRS-CI will immediately notify TIGTA of the allegations; and
- The TIGTA SA will prepare a Form OI 2028-M, which will be placed in the investigative file to document the notification.

If employee tax violations are alleged to have been committed by an IRS-CI employee:

- The information will be provided by the responsible TIGTA SAC to the responsible IRS-CI Director of Field Operations (DFO); and
- The DFO will ensure the IRS-CI SA assigned to work on the investigation is from a district other than the district in which the targeted IRS-CI employee is assigned.

If IRS-CI declines to participate in an investigation and TIGTA disagrees with CI's decision, the ASAC/SAC should elevate the issue to the appropriate DAIGI for further review and consideration. The last right of refusal is reserved for the Inspector General.

In a joint investigation with IRS-CI, the TIGTA investigative report may be submitted to DOJ-Tax as an inclusion to IRS-CI's report or separately, depending on the circumstances of the case. The appropriate DOJ-Tax Enforcement Division should be contacted for guidance. Separate referrals may be necessary due to the need for a timely submission or other case specific factors. If the case involves an IRS employee subject and TIGTA has primary jurisdiction, then TIGTA should submit a separate report or include the CI report as an inclusion to TIGTA's report. If TIGTA makes a separate referral to DOJ-Tax, ensure the referral states that IRS-CI will be referring its case at a later date. If IRS-CI has primary jurisdiction and the referral is made jointly, the responsible SAC will forward the TIGTA ROI to the local IRS-CI SAC for inclusion with IRS-CI's referral to DOJ-Tax.

If, after initial review of an employee tax allegation, the IRS-CI SA working with TIGTA believes that no criminal tax violation has occurred:

- The IRS-CI SA should consult with IRS-CI management for concurrence and advise TIGTA accordingly;
- If TIGTA concurs that no criminal tax violations have occurred, the IRS-CI SA will share his/her investigative findings with TIGTA and provide a report to TIGTA summarizing the tax issues and investigative activity to date;
- The IRS-CI SA will not include conclusions or recommendations in the report; and
- If approved by TIGTA management, the IRS-CI report will become an attachment to the TIGTA ROI.

This same process will be followed if IRS-CI conducts an investigation, but does not believe there is a reasonable probability of conviction on tax charges and chooses to discontinue its investigation.

280.13.3   Referrals to DOJ-Tax.  When appropriate in the course of an investigation, TIGTA SAs will utilize Form OI 8107, Request for Grand Jury Investigation, to request authorization from DOJ-Tax to empanel a tax grand jury.  Use of this request would be appropriate if TIGTA wants to issue grand jury subpoenas or wants to include another (non-IRS) agency in the investigation.  Typically, if IRS-CI is joining the investigation, authorization of a tax grand jury is part of CI's normal protocol; however, TIGTA is not precluded from requesting the authorization and circumstances may deem it appropriate.  Provide the information as requested in the form and instructions and mail the form to DOJ-Tax at the address indicated in Block 1 of the form.

Either a Form OI 8107 or a DOJ-Tax prosecution authorization (via a referral letter) is required prior to an SA making any specific and substantive tax disclosures directly to an AUSA.  Examples of DOJ-Tax Grand Jury Requests and/or Referral Letters can be found in the DOJ Tax Library link on the OI webpage.

If CI declines to investigate an employee tax-related allegation, contact with DOJ-Tax by TIGTA is still necessary to obtain authorization for prosecution by the local U.S. Attorney's Office (Form 8108), or a declination (Form 8110).  Additional information regarding the process and forms for DOJ-Tax referrals can be found in Section 350.7 and Exhibit (400)-350.3.  See Example DOJ-Tax Referral Letter.

Since both administrative and criminal violations may be present on employee tax cases, *i.e.*, a violation of 26 U.S.C. § 7206 may also be a potential violation of RRA 98 § 1203(b)(9), any subject interview of an IRS or TIGTA employee regarding false statements on his/her tax return should be conducted using OI Form 5230, Advisement of Rights - Non-Custodial, **unless prosecution has been declined** by the appropriate DOJ-Tax authority.  If applicable, obtain a prosecutive declination on employee cases

from DOJ-Tax by completing Form OI 8110, Referral for Prosecutive Declination and Kalkines Warning Authorization, and mail to the address indicated in Block 1 of the form. DOJ-Tax will return the form to the requesting office with a prosecutive decision. After DOJ-Tax has declined prosecution and authorized the use of the Kalkines Warning, interviews of the employee should be conducted using Form OI 8112, Statement of Rights and Obligations.

280.13.4  Requesting Employee Audits.  When an investigation declined by IRS-CI and DOJ-Tax includes allegations that an IRS or TIGTA employee's own personal tax return may contain false statements and/or an understatement of tax liability, request an employee audit to determine if the employee has violated a rule of conduct, including a potential violation of § 1203(b)(9) of RRA 98. The SA will request a tax audit by following the procedures outlined in Section 250.23.

The employee audit generally will be requested after the case has been declined for prosecution, but the timing of the audit may depend on the specific circumstances of the investigation. Discuss the circumstances with the ASAC/SAC/IRS-CI to ensure a civil audit referral will not jeopardize the criminal case, when applicable. If declined for prosecution, refer for employee audit in order to facilitate an administrative adjudication. Investigations that have been declined can be reconsidered criminally if false information is supplied in the audit or if criminal activity continues.

IRS will provide the results of the employee audit to the TIGTA office or individual identified in the requesting memorandum. Upon receipt of the audit results for IRS employees, the SA will prepare a final ROI, including the results of the audit, and forward the ROI to IRS ECCO for adjudication as instructed in Section 250.12. Ensure the subject interview has addressed the willfulness of the employee's actions. If the initial subject interview was conducted prior to the audit, an additional interview may be necessary to address willfulness.

ROIs that allege violations of RRA § 1203 (b)(9) should not be forwarded to IRS ECCO without audit results. IRS is unable to adjudicate this type of allegation without the audit results.