## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KIESHA D. LEWIS,

    Plaintiff,

v.

U.S. DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE,
TREASURY INSPECTOR GENERAL FOR
TAX ADMINISTRATION,
BUREAU OF ENGRAVING AND
PRINTING and
U.S. DEPARTMENT OF VETERANS
AFFAIRS,

    Defendants.

Civil Action No. TDC-20-0494

### MEMORANDUM OPINION

Self-represented Plaintiff Kiesha Lewis, a former employee of the United States Department of the Treasury ("Treasury"), has filed this civil action alleging that Defendants, consisting of Treasury, several component agencies of Treasury, and the United States Department of Veterans Affairs ("VA"), violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018), and the Privacy Act, 5 U.S.C. § 552a. Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Lewis is a former employee of the Internal Revenue Service ("IRS") and the Bureau of Engraving and Printing ("BEP"), both component agencies of Treasury. In her original 16-count

Complaint against Treasury, the IRS, the BEP, the Bureau of the Fiscal Service, and the Treasury Inspector General for Tax Administration ("TIGTA") (collectively, "the Treasury Defendants"), as well as against the VA, Lewis alleged violations of FOIA and the Privacy Act based on requests for information she filed in the past several years. She also alleged violations of certain provisions of the Privacy Act based on allegations of improper access, modification, or maintenance of records by the Treasury Defendants.

Defendants then filed a Motion to Dismiss ("the First Motion"). In a September 21, 2021 Memorandum Opinion, which contains relevant background information and is incorporated herein by reference, the Court granted in part and denied in part the First Motion, dismissed all claims against the Bureau of the Fiscal Service and certain FOIA claims, and ordered Lewis to file an Amended Complaint with a more definite statement of her claims. *See Lewis v. Dep't of Treasury*, No. TDC-20-0494, 2021 WL 4290635, at *11 (D. Md. Sept. 21, 2021). After Lewis filed her Amended Complaint, ECF No. 28, the parties conferred and filed a Joint Status Report in which they agreed to dismiss certain claims. As a result, only the following claims in Lewis's Amended Complaint remain: Count 1, a Privacy Act claim and a FOIA claim against TIGTA relating to Request No. 2020-FOI-00023; Count 3, a Privacy Act claim and a FOIA claim against the VA relating to Request No. 20-00012-FOIP; Count 5, a Privacy Act claim against the IRS asserting that it failed to update Lewis's agency separation records, in violation of 5 U.S.C. § 552a(g)(1)(C); Count 8, a Privacy Act claim against the BEP asserting that it failed to provide the appropriate Privacy Act statement under 5 U.S.C. § 552a(e)(3) before soliciting Lewis's social security number and other personal data, in violation of 5 U.S.C. § 552a(g)(1)(D); Count 9, a Privacy Act claim against the IRS asserting that it improperly accessed and modified Lewis's USAJobs account, in violation of 5 U.S.C. § 552a(g)(1)(D); Count 11, a Privacy Act claim against

2

the IRS asserting that it failed to process Lewis's Fresh Start Application, in violation of 5 U.S.C. § 552a(g)(1)(C); and Count 12, a Privacy Act claim against TIGTA asserting that it removed or deleted the TIGTA complaint filed by Lewis on November 16, 2017, in violation of 5 U.S.C. § 552a(g)(1)(C).

## DISCUSSION

Defendants now seek dismissal or summary judgment as to all of these remaining claims. The VA seeks dismissal of Count 3, the only remaining count against it, under Federal Rule of Civil Procedure 12(b)(6), on the ground that Lewis's claim is moot because the VA provided the information sought by Lewis under FOIA and the Privacy Act. The Treasury Defendants seek (1) summary judgment under Rule 56(a) as to Count 1, because TIGTA has properly withheld portions of its response to Lewis's FOIA request; (2) dismissal under Rule 12(b)(1) of Lewis's Privacy Act claims in Counts 5, 8, 9, 11, and 12 based on sovereign immunity; and (3) dismissal under Rule 12(b)(6) or, in the alternative, summary judgment under Rule 56(a), as to Lewis's Privacy Act claims in Counts 5, 8, 9, 11, and 12 because Lewis has failed to establish the requisite elements of a Privacy Act claim in each of those counts.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson*

3

*Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). In this instance, Defendants have submitted declarations and other documentary evidence for consideration. Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by fact that the Motion was titled as a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and, for certain claims, specifically requests summary judgment. Mot. at 1, 3, 16, 18, 23, ECF No. 40-1. Moreover, the Court sent a letter to Lewis, as a self-represented party, referencing Rules 12 and 56 and informing her that the Motion was seeking dismissal or summary judgment and providing guidance on how to respond to such a motion. Notice at 1, ECF No. 42. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under

4

Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). No such declaration was filed here, and Lewis has, in fact, attached her own exhibits to her memorandum in opposition to the Motion ("Opposition"). In her Opposition, Lewis states that, as to Counts 9, 11, and 12, "it is [her] belief that intent and the linkage between these events and adverse actions (or the lack thereof) can be proven/disproven during the Discovery Phase of this process." Opp'n at 9-10, 12, 13, ECF No. 43. Although these statements could be construed as requests for discovery, the subjects of such discovery—intent and causation—are not material to the Court's analysis on these counts, which are resolved on other grounds. *See infra* Parts III.B.1(b)-(c), III.B.2(b). The Court may therefore treat the Motion as seeking summary judgment on the arguments requiring consideration of the parties' submitted exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

5

**II.     VA**

The only remaining count against the VA is Count 3, which includes a Privacy Act claim and a FOIA claim relating to Request No. 20-00012-FOIP.  The VA argues that these claims are moot because the parties agree that the VA has provided the responsive information under FOIA. Lewis does not contest, on the merits, that the VA has provided the relevant information, and she does not claim that the produced records contain any remaining improper redactions. Nevertheless, Lewis argues that the VA's prior redactions based on FOIA exemptions were made "improperly or arbitrarily" and that she thus "should be compensated for having to use a federal lawsuit to obtain these records."  Opp'n at 2.

Where an agency "produces the requested documents," "a challenge to a particular denial of a FOIA request becomes moot."  *Reg'l Mgmt. Corp., Inc. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999).  Notably, money damages are not available under the FOIA.  *See* 5 U.S.C. § 552(a)(4)(B) (authorizing injunctive relief only); *Smith v. Commc'n Works of Am. (CWA) Dist. 2*, No. 8:12-cv-0027-AW, 2012 WL 6727150, at *4 (D. Md. Dec. 26, 2012), *aff'd sub nom. Smith v. EEOC*, 517 F. App'x 159 (4th Cir. 2013).  Because the parties agree that the VA has produced the relevant documents and no other merits-based relief is available to Lewis, the FOIA claim against the VA is moot.

The same is true for Lewis's Privacy Act claim.  Though the Privacy Act authorizes monetary damages for certain claims, Count 3 is a claim based on a denial of access to records under 5 U.S.C. § 552a(g)(1)(B), and damages are not available for claims under that provision. *See* Am. Compl. at 4, ECF No. 28; 5 U.S.C. § 552a(g)(3)(A) (authorizing injunctive relief only for § 552a(g)(1)(B) claims); *Thurston v. United States*, 810 F.2d 438, 447 (4th Cir. 1987) (holding

that no statutory damages are available in a Privacy Act suit under § 552a(g)(1)(B)). As a result, the Privacy Act claim in Count 3 is also moot.

To the extent that Lewis seeks attorney's fees and other litigation costs under 5 U.S.C. § 552(a)(4)(E)(i) or 5 U.S.C. § 552a(g)(3)(B), a request for attorney's fees is separate from the merits of an action and will not be considered at this time. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) (stating that "a claim for attorney's fees is not part of the merits of the action as to which the fees pertain"); *see also Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) (applying *Budinich* in concluding that a FOIA claim was moot). In any event, the Court notes that as a general matter, "a *pro se* non-attorney may not recover attorney fees" under FOIA, so any such request would fail. *Benavides v. Bureau of Prisons*, 993 F.2d 257, 260 (D.C. Cir. 1993); *see Barrett v. Bureau of Customs*, 651 F.2d 1087, 1090 (5th Cir. Unit A July 1981) (holding that attorney's fees are not available to a *pro se* litigant under the Privacy Act).

Because Lewis's claims against the VA are moot, the Motion will be granted as to Count 3, and the VA will be dismissed as a defendant.

## III.    The Treasury Defendants

Lewis's remaining claims against the Treasury Defendants are Counts 1, 5, 8, 9, 11, and 12.

### A.    Count 1

In Count 1, Lewis asserts a claim against TIGTA that in response to Request No. 2020-FOI-00023, it failed to produce to her documents relating to a complaint she filed with TIGTA about an IRS employee. Though Count 1 invokes both FOIA and the Privacy Act, in response to Lewis's request, TIGTA concluded that because the IRS employee did not consent to the release of the records, it "determined that Lewis would gain greater access to the information she requested

7

under the FOIA, and her request was processed under the FOIA and not the Privacy Act." Turner Decl. ¶ 47, Mot. Ex. 1, ECF No. 40-4. At this point, Lewis does not challenge this determination or assert that any particular Privacy Act exemption applies and instead states that she "defers to the Court's ruling if the stated *FOIA exemptions* apply to these records." Opp'n at 1 (emphasis added). As a result, the Court will grant the Motion as to the Privacy Act claim in Count 1.

As for the FOIA claim, TIGTA responded to Lewis's request by affirming a prior determination in response to Request No. 2017-FOI-00102 to produce 112 pages in full and to withhold 4 pages in full and 22 pages in part. It now seeks summary judgment because, it argues, these withholdings were proper under applicable FOIA exemptions.

FOIA "was enacted to maintain an open government and to ensure the existence of an informed citizenry." *Ethyl Corp. v. Env't Prot. Agency*, 25 F.3d 1241, 1245 (4th Cir. 1994). To that end, it "is to be construed broadly to provide information to the public in accordance with its purposes." *Id.* However, because "public disclosure is not always in the public interest, the statute contains nine exemptions that reflect a wide array of concerns and are designed to safeguard various public interests against the harms that would arise from overbroad disclosure." *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 728 (4th Cir. 2013) (internal citations omitted). "FOIA exemptions are to be narrowly construed." *Id.* at 729 (internal citation omitted). The Government has the "burden of demonstrating that a requested document falls under an exemption." *Id.* (quoting *Hunton & Williams v. Dep't of Justice*, 590 F.3d 272, 276 (4th Cir. 2010)). Here, to justify its withholdings, TIGTA invoked the FOIA exemptions set forth in 5 U.S.C. §§ 552(b)(6) and 552(b)(7)(C), commonly referred to as "Exemption 6" and "Exemption 7(C)," respectively.

8

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To determine whether an invasion of privacy would be "clearly unwarranted," the court balances an individual's privacy interest against the public interest in disclosure, which is served "to the extent . . . disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties.'" *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 332 (4th Cir. 2016) (quoting *U.S. Dep't of Defense v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 497 (1994)). Exemption 6 covers "personal information in public records, even if it is not embarrassing or of an intimate nature." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Though Exemption 7(C) does not require a "clearly unwarranted" invasion of privacy, courts apply a "similar analysis" with respect to Exemption 7(C) as with Exemption 6. *Solers, Inc.*, 827 F.3d at 332. Because TIGTA withheld portions of pages or full pages pursuant to both exemptions, and Lewis does not argue that the distinctions between the two exemptions are material to the analysis, the Court will analyze them together.

Here, TIGTA submitted the relevant documents to the Court for *in camera* review, which the Court has conducted. The withheld or redacted documents all relate to two complaints submitted by Lewis to TIGTA alleging misconduct by an IRS employee and the subsequent investigation conducted by TIGTA. Based on its review, the Court concludes that the withheld information can be separated into three categories of information: (1) personally identifiable

9

information ("PII") related to the IRS employee, including the employee's home address, specific title, duty station, social security number, date of birth, age, and gender; (2) descriptions of the alleged violations; and (3) administrative information relating to the complaints, including the internal tracking numbers for the complaints, information on the processing and status of the investigation at various times, and general instructions on how a TIGTA investigator should complete a standard complaint referral memorandum.

As to the first category of information, the Court finds that the privacy interest of the IRS employee in the PII outweighs any relevant public interest in disclosure. Government employees have "a substantial interest in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment." *Neely v. Fed. Bureau of Investigation*, 208 F.3d 461, 464-65 (4th Cir. 2000). Though TIGTA did not redact the name of the employee subject to investigation, *see, e.g.,* Records for *In Camera* Review at 2, ECF No. 41-1, the Court finds that disclosure of the PII would encroach on the employee's privacy interest without shedding any light on TIGTA's carrying out of its investigation into Lewis's complaints. *See Solers*, 827 F.3d at 333 (concluding that disclosure of the names and contact information of IRS employees consulted in connection with an audit were properly withheld under Exemptions 6 and 7(C)).

As for the second category, descriptions of the alleged violations, the Court finds that such information is also properly withheld under these exemptions. Where the allegations were not necessarily proven or the subject of a finding of misconduct, disclosure at this point could reasonably be expected to impose an unwarranted invasion of personal privacy because the records would connect the employee to a particular investigation and provide information about the allegations at issue. *See Neely*, 208 F.3d at 465. Although other records disclosed by TIGTA in

response to the same request may provide the same information, the fact that the information may already be available to the public does not provide a basis to require disclosure. *Id.* (holding that it was error to discount privacy interests solely because some of the information "had been publicly disclosed or [was] publicly available").

As for the third category of information, consisting of internal tracking numbers, information on the administrative processing and status of the complaint and investigation, and standard form instructions, a review of the documents reveals that these entries do not disclose any of the substance of the allegations against the employee and therefore do not implicate the same privacy interests. At the same time, this information may shed light on the agency's commitment to processing internal complaints. In light of the public interest in understanding how TIGTA carries out its investigations into complaints and the minimal privacy interest implicated by this information, the Court finds on balance that disclosure of this category of information would not constitute "a clearly unwarranted invasion of personal privacy" or an "unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), (b)(7)(C).

The Motion will therefore be granted in part and denied in part as to Count 1. The Motion will be granted as to the withheld PII and descriptions of the alleged violations but denied as to the remaining redacted information.

**B.    Privacy Act Claims**

In Counts 5, 8, 9, 11, and 12, Lewis asserts claims under the Privacy Act, 5 U.S.C. § 552a(g)(1)(C)-(D). Counts 5, 11, and 12 allege violations of § 552a(g)(1)(C), which provides that an individual may bring a civil action against a federal agency when the agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character,

11

rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). Counts 8 and 9 allege violations of § 552a(g)(1)(D), which provides that a civil action may be filed when an agency "fails to comply with any other provision" of the Privacy Act "in such a way as to have an adverse effect on an individual," *id.* § 552a(g)(1)(D). For both provisions, the agency may be liable for "actual damages sustained by the individual as a result of" an "intentional or willful" violation. *Id.* § 552a(g)(4)(A).

As a threshold issue, the Treasury Defendants argue that all of Lewis's claims under these provisions must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because she failed to allege that the agencies acted intentionally or willfully, and § 552a(g)(4)(A) makes such an allegation a prerequisite to maintain a Privacy Act claim. Specifically, the Treasury Defendants rely on the statement by the United States Court of Appeals for the District of Columbia Circuit that "[t]o unlock the Privacy Act's waiver of sovereign immunity and state a cognizable claim for damages, a plaintiff must allege that . . . the agency 'intentional[ly] or willful[ly]' violated the Act's requirements." *In re U.S. Off. Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 62 (D.C. Cir. 2019). However, the United States Court of Appeals for the Fourth Circuit has previously treated the elements of § 552a(g)(4)(A) not as jurisdictional requirements, but rather as requirements to recover damages. *See Scrimgeour v. Internal Revenue Serv.*, 149 F.3d 318, 326 (4th Cir. 1998) (analyzing the requirement of "intentional or willful" behavior as part of whether the plaintiff demonstrated liability under the Privacy Act, not as a jurisdictional requirement; *Hogan v. England*, 159 F. App'x 534, 537 (4th Cir. 2005) (same). As a result, the Court declines to analyze the Motion under Rule 12(b)(1) and instead considers the

12

Treasury Defendants' arguments relating to Counts 5, 8, 9, 11, and 12 under Rule 12(b)(6) and Rule 56.

### 1.    5 U.S.C. § 552a(g)(1)(C)

To prevail on a claim under 5 U.S.C. § 552a(g)(1)(C), plaintiffs must establish that (1) they have "been aggrieved by an adverse determination"; (2) the agency "failed to maintain [their] records with the degree of accuracy necessary to assure fairness in the determination"; (3) the agency's "reliance on the inaccurate records was the proximate cause of the adverse determination"; and (4) the agency "acted intentionally or willfully in failing to maintain accurate records." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009) (quoting *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996)).

#### a.    Count 5

In Count 5, Lewis asserts a claim against the IRS under § 552a(g)(1)(C) for failure to accurately maintain records related to her separation from the agency. Specifically, she asserts that the IRS maintained an active email address for her for 18 months, resulting in delays in the changing of her employee status in the physical security system and in the generation of a final Standard Form 50 ("SF-50") reflecting her departure from the IRS, which she did not receive until June 2018, nine months after her October 2017 departure. These delays, she asserts, created issues with her subsequent job with the BEP in that she could not receive proper credentials for her BEP position while still associated with the IRS, which in turn subjected her to possible termination from the BEP for lack of a proper identification card. She also contends that the delays impacted her ability to apply for other government positions because she could not provide documentation showing her previous government employment experience.

13

The Treasury Defendants argue that Lewis has not sufficiently alleged or provided evidence to show that she was aggrieved by an adverse determination, that the IRS failed to accurately maintain her separation records, or that any such failure caused any adverse determination. In support of these arguments, they have provided a declaration from an IRS attorney describing the IRS's employment separation procedures and stating that Lewis's separation forms were timely generated and that her email address was restricted in accordance with those procedures. In response, Lewis acknowledges that her "resignation paperwork was processed promptly" but maintains that she nevertheless did not timely receive her SF-50. Opp'n at 5. Because Lewis has not provided a basis to conclude that the IRS's handling of her email address and delays relating to her onboarding with the BEP caused or constituted any adverse determinations against her, the Motion will be granted as to Count 5 to the extent it is based on these grounds.

As for Lewis's claim that she was prevented from successfully applying for a new job because she did not receive her SF-50, the failure to secure employment can be an adverse determination in that it is the denial of an employment opportunity. *See* Privacy Act Guidelines, 40 Fed. Reg. 28949, 28969 (July 9, 1975) (defining an adverse determination as "one resulting in the denial of a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been expected to have been given if the record had not been deficient"); *Lee v. Geren*, 480 F. Supp. 2d 198, 210 (D.D.C. 2007) (relying on the Privacy Act Guidelines in deciding whether a notice constituted an adverse determination). Lewis has alleged facts demonstrating that she requested the SF-50 from the IRS multiple times, and that on at least one occasion, she was informed that she would not be considered for a job at the U.S. Department of Homeland Security ("DHS") because she had not submitted that form to prove that she had sufficient

14

experience to be eligible for the position. Although the IRS's failure to provide the SF-50 upon request was unfortunate and troubling, it does not constitute a violation of § 552a(g)(1)(C). First, a violation of that provision requires that the agency failed to maintain the record accurately, not that it failed to provide a copy upon request. *See Chambers*, 568 F.3d at 1007. Here, the record demonstrates that Lewis's SF-50 was timely and accurately generated on October 20, 2017 in accordance with IRS procedures, that Lewis eventually received a copy, and that she has not claimed that it contains inaccurate information. Second, a violation requires that an agency's "reliance on the inaccurate records was the proximate cause of the adverse determination," *Chambers*, 568 F.3d at 1007, but Lewis does not claim that DHS relied on any inaccuracy in the SF-50, only that she was not provided with a copy of the SF-50 in a timely manner and thus could not provide it to DHS. Because the failure to send a copy to Lewis, even if improper, did not violate § 552a(g)(1)(C), the Motion will be granted as to Count 5.

### b.    Count 11

In Count 11, Lewis asserts a claim against the IRS under § 552a(g)(1)(C) based on its alleged failure to process her "Fresh Start Application," which allegedly prevented her from using the IRS Fresh Start Program to reduce her tax debt while she was unemployed or working part time. Am. Compl. at 14. The Treasury Defendants have submitted a declaration by an IRS attorney stating that there is no single "Fresh Start Application" that must be submitted to access the IRS's Fresh Start Program, which assists individuals and small businesses in paying overdue taxes by "tak[ing] advantage of the changes to the tax code by applying for various types of relief, including offers in compromise, penalty abatements, and installment agreements." Ahn Decl. ¶ 21, Mot. Ex. 4, ECF No. 40-7. The Treasury Defendants argue that Lewis has failed to show that

she was aggrieved by an adverse determination, and that any attempt to challenge her tax liability cannot occur through the Privacy Act.

Lewis has failed to demonstrate that she was aggrieved by an adverse determination.  In her Amended Complaint, she alleges that records related to her application for tax relief under the IRS's Fresh Start Program were "not showing in the IRS system," which resulted in the application not being processed by the IRS and a missed opportunity to pay a lower amount of her tax debt. Am. Compl. at 15.  However, as stated in her Opposition, the IRS acknowledged receipt of her correspondence.  Lewis has not alleged, and has provided no evidence to show, that the IRS denied her Fresh Start Program application.  Although she argues that an IRS Notice of Intent to Levy, dated November 5, 2019, effectively constituted an adverse determination, an intent to levy letter serves only as a notice of upcoming tax liability and is not itself a denial of an application under the Fresh Start Program or any other opportunity for tax relief.  *See Lee*, 480 F. Supp. 2d at 210 (holding that the "mere issuance of a notice of proposed termination" is not an adverse determination under the Privacy Act); *cf. Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 659-60 (D.C. Cir. 1996) (noting without deciding that "it is not clear" that any adverse determination for purposes of a Privacy Act claim was made where the parole commission prepared a "preliminary assessment" to not grant parole because it was not a decision to deny parole).  As a result, the Court finds that Lewis has failed to properly allege or demonstrate an adverse determination, as required to establish a violation of § 552a(g)(1)(C).  The Motion will be granted as to Count 11.

### c.    Count 12

In Count 12, Lewis asserts a claim against TIGTA under § 552a(g)(1)(C) for allegedly removing or deleting the complaint against an IRS employee that she filed on November 16, 2017. Lewis's Amended Complaint and her Opposition both acknowledge that the complaint was

addressed, but she maintains that she was adversely affected because it was not "timely adjudicated." Opp'n at 13. However, a claim under § 552a(g)(1)(C) requires an adverse determination, not merely an adverse effect. *See Chambers*, 568 F.3d at 1007. Because any alleged delay in processing the complaint is not a determination that resulted "in the denial of a right, benefit, entitlement, or employment" as required to sustain a violation of § 552a(g)(1)(C), the Motion will be granted as to Count 12. *See* Privacy Act Guidelines, 40 Fed. Reg. at 28969; *cf. Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990) (questioning whether a delay alone is an adverse determination).

### 2.   5 U.S.C. § 552a(g)(1)(D)

In Counts 8 and 9, Lewis alleges violations of 5 U.S.C. § 552a(g)(1)(D). To prevail on a claim made pursuant to this provision of the Privacy Act, a plaintiff must establish that "(1) the agency violated a provision of the [Privacy] Act, (2) the violation was 'intentional or willful,' and (3) the violation had an 'adverse effect' on the plaintiff." *Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010) (internal citations omitted). The Treasury Defendants argue that Lewis has failed to establish these elements for Counts 8 and 9.

### a.   Count 8

In Count 8, Lewis asserts that after she left her position at the BEP, BEP officials improperly requested and required Lewis to provide certain PII, including her social security number and date of birth, in order to remove her from a BEP personnel record system. She contends that the request violated 5 U.S.C. § 552a(e)(3), another provision in the Privacy Act, which provides that:

> Each agency that maintains a system of records shall—

> * * *

17

(3)     inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual [of]—

    (A)     the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

    (B)     the principal purpose or purposes for which the information is intended to be used;

    (C)     the routine uses which may be made of the information . . .; and

    (D)     the effects on him, if any, of not providing all or any part of the requested information[.]

5 U.S.C. § 552a(e)(3). Specifically, Lewis asserts that the BEP did not have a proper reason for requesting her PII. In support of this claim, Lewis attached to her Amended Complaint screenshots of text messages dated November 22, 2019 between her and a BEP Contracting Officer Representative ("COR") in which the COR requested Lewis's social security number, address, phone number, email, and middle name and explained that it was "to get [Lewis] cleared out of BEP" so that she could obtain a new employee identification card in her new position. Am. Compl. Ex. H at 74-75, ECF No. 27-2. The COR also stated that the PII is not saved by the BEP. The Treasury Defendants argue that the Motion should be granted as to this count because the BEP had authority to request this information to process her departure, the BEP notified her of the principal purpose of the request for this information, and Lewis has not alleged any actual adverse effect caused by this specific request.

Lewis's primary complaint that the BEP did not have a proper reason for requesting her information is belied by the record. According to a declaration from Venancio R. Biela, Jr., a Division Director with the BEP Acquisition Program Management Division, Office of Chief Procurement Officer, a COR is responsible for accessing a contractor access request ("CAR") form in order "to create a departure action." Biela Decl. ¶ 10, Mot. Ex. 5, ECF No. 40-8. If the COR

did not create the original CAR form during the onboarding process, that official would "not have access to the original CAR and would need to create a new CAR [form] to process the departure," a process that "requires the COR to collect the same PII from the contractor that was collected at onboarding." *Id.* ¶¶ 11-12. The CAR form that must be completed provides the required Privacy Act disclosures under 5 U.S.C. § 552a(e)(3), including the relevant authority that authorizes the solicitation of the information. *See* Biela Decl. ¶ 5; BEP Form 2276 at 5, 8, Mot. Ex. 5-E, ECF No. 40-8. The form also provides that the information obtained is "governed by the Privacy Act and must be safeguarded from unauthorized disclosure." BEP Form 2276 at 8. Although the text message request made in connection with Lewis's departure occurred at a later date, the disclosures in the original CAR form are fairly construed as applying to that exchange. The fact that the exchange occurred a few weeks after Lewis's last day of work, as reflected in the email exchanges between Lewis and a BEP human resources official, does not support an inference that the request was anything other than part of that standard process. The Court therefore finds that Lewis has failed to show that the BEP violated the Privacy Act.

Even if the November 2019 exchange could be deemed unconnected to the original CAR form, Lewis's claim cannot succeed because she has not alleged facts sufficient to show that BEP's actions were intentional or willful in that the BEP acted "without grounds for believing [the action] to be lawful" or that it "flagrantly disregard[ed]" her rights. *Scrimgeour*, 149 F.3d at 326 (quoting *Waters v. Thornburgh*, 888 F.2d 870, 875 (D.C. Cir. 1989)). Nor has she plausibly alleged that this questioning resulted in an adverse effect on her. *See Maydak*, 630 F.3d at 178. Although Lewis asserts that that she was subject to credit card identity theft and unauthorized access to her personal email account at some point after this exchange, the information she has provided in support of that claim does not connect it to the BEP in any way, and she has specifically stated that

she is not accusing the BEP or Treasury of engaging in such activities. Her claim that "soft pulls on my credit report" by the IRS were somehow connected to the PII request by the BEP is entirely speculative as these are two different agencies. Am. Compl. at 10. For all of these reasons, the Court will grant the Motion as to Count 8.

**b.    Count 9**

In Count 9, Lewis asserts that IRS officials violated a provision of the Privacy Act, 5 U.S.C. § 552a(b), when they "improperly accessed and monitored" her USAJobs account and thereby hindered her ability to apply for jobs. Am. Compl. at 11. That provision provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). The Treasury Defendants argue that the IRS did not violate this provision because a USAJobs account is not a record contained in a system of records under the control of the IRS, and the IRS does not have access to applicant information in USAJobs. Regardless of whether those assertions are true, Lewis has provided no allegations or evidence demonstrating that any violation of § 552a(b) occurred, specifically that the IRS improperly "disclose[d]" any particular USAJobs application to any particular individual or agency without her consent. 5 U.S.C. § 552a(b). Because Lewis has failed to allege a plausible violation of § 552a(b), the Motion will be granted as to Count 9.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Counts 3, 5, 8, 9, 11, and 12 and granted in part as to Count 1. The Motion will be otherwise denied in that as to Count 1, TIGTA will be required to disclose the information described above that is not subject to FOIA Exemptions 6 and 7(C). A separate Order shall issue.

Date: July 21, 2022



THEODORE D. CHUANG
United States District Judge